277 N.J. Super. 192 (1994)
649 A.2d 408
MINNIE RANDALL, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, LT. LUTHER PARKER AND SCO MARY LAUGHLIN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1994.
Decided November 9, 1994.
*194 Before Judges BRODY, LONG and LEVY.
Elizabeth D. Berenato argued the cause for appellant (Smith, Goldstein & Magram, attorneys; Jeffrey N. Goldstein and Ms. Berenato, on the brief).
Rhonda S. Berliner, Deputy Attorney General, argued the cause for respondents (Deborah T. Poritz, Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Ms. Berliner, on the brief).
The opinion of the court was delivered by BRODY, P.J.A.D.
Plaintiff brought this action under the Tort Claims Act, N.J.S.A. 59:1-1 et seq. The trial court granted defendants' motion for summary judgment on the ground that plaintiff's alleged injuries did not meet the verbal threshold to qualify for pain and suffering damages. N.J.S.A. 59:9-2d. We affirm on the ground that in opposing the motion plaintiff failed to submit objective proof that she sustained the injuries she claimed and failed to submit adequate medical proof that the claimed injuries were caused by defendants and are permanent.
The claim arises out of an incident that occurred at the Albert C. Wagner Correctional Facility. Immediately after plaintiff had visited one of the inmates there, State corrections officers discovered that the inmate possessed cash in violation of the institution's regulations. When plaintiff next arrived for a visit on June 24, 1989, a female corrections officer subjected her to an intrusive strip-search. The officer found neither cash nor other contraband. Plaintiff contends that the search was degrading and *195 humiliating, and caused her to suffer permanent psychological and physical injuries.
Plaintiff described her injuries as follows in a certification filed in opposition to defendants' motion:
I am extremely upset, tense and anxious since the incident occurred. My emotional trauma has manifested itself physically. I have screaming bouts where I scream uncontrollably. I suffer from insomnia, nightmares, flashbacks, violent outbursts of anger, difficulty eating. I also suffer from nervous tremors, diarrhea, chronic stomach pains, severe hair loss, hives, severe dry mouth and gastrointestinal problems. These symptoms have persisted for almost four years and my psychiatrist has told me it is permanent.
She also submitted copies of two reports of her psychiatrist, Dr. Ira Fox. He examined her three times. The first examination was three months after the search. His written report to plaintiff's attorney of that examination, dated shortly before suit was filed, contained little more than a recitation of plaintiff's complaints to him. The only reference to his own observations of plaintiff was:
Mental status examination at the time of initial evaluation found Minnie Randall to be a well developed, well nourished black female. She was obviously depressed in both mood and affect.... She was oriented to time, place and person. Gross memory was intact.
His diagnosis was, "Acute post-traumatic stress disorder directly related to and caused by the incident to her person on 24 June 1989." The doctor reported that plaintiff returned to his office one more time, about three weeks later. He does not state what treatment, if any, he administered or prescribed.
The doctor's second report referred to an examination he conducted three and a half years after he had last seen plaintiff, and after defendants had moved for summary judgment. In it he again reports plaintiff's complaints to him and concludes that they are permanent:
Without restating what has already been said, Minnie Randall continues to suffer from a Post-traumatic stress disorder.
She continues to have flashbacks, thought intrusions, sleep disturbance, mood changes and avoidance of the noxious stimulous [sic] which caused her post-traumatic stress disorder.

*196 I have known her for many years. This incident has had an indelible and permanent effect on her. She continues to feel violated and "She shouldn't of looked in my private parts." With these frequent flashbacks and thought intrusions which occur many times per week, she has accompanied physical symptoms. These include diarrhea and severe dry mouth. These gastrointestinal, physical paralells [sic] of her emotional state are likewise permanent.
The report does not suggest that the doctor himself observed any of these "physical symptoms."
N.J.S.A. 59:9-2d provides in relevant part:
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment....
Emotional distress is the kind of "pain and suffering" that would not be recoverable in this case unless it caused a "permanent loss of a bodily function." Srebnik v. State, 245 N.J. Super. 344, 585 A.2d 950 (App.Div. 1991).
The trial judge mistakenly accepted plaintiff's complaints as true for purposes of deciding defendants' motion, but concluded that none of those complaints constitutes the "permanent loss of a bodily function." We need not resolve the parties' dispute over whether any or all of plaintiff's claimed injuries constitute permanent losses of bodily functions because none of those claims is supported by objective medical evidence that they exist, that they were caused by defendants' unwarranted search or that they are permanent.
The verbal threshold in the Tort Claims Act is intended to bar recovery for mere "subjective feelings of discomfort." Ayers v. Township of Jackson, 106 N.J. 557, 571, 525 A.2d 287 (1987). Although the Court in Ayers did not define "subjective feelings" as opposed to "objective" injuries, five years later it discussed in greater detail a similar distinction that is made when defining the proof necessary to meet the tort verbal threshold for recovering noneconomic losses under the No-Fault Automobile Insurance Act, N.J.S.A. 39:6A-1 et seq. Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992). By limiting recovery for pain and suffering to *197 cases where there are objective manifestations, both the Tort Claims Act and the No-Fault Automobile Insurance Act seek to accomplish the same goal of reducing the cost of insuring against liability for causing injury. It is therefore fitting to apply the judicial gloss that has developed respecting the No-Fault Automobile Insurance Act verbal threshold when interpreting the Tort Claims Act verbal threshold. Cf. United States Navigation Co. v. Cunard S.S. Co., 284 U.S. 474, 480-81, 52 S.Ct. 247, 249, 76 L.Ed. 408, 412 (1932) (Interstate Commerce Act and Shipping Act are "parallel" Congressional legislation and therefore should be given the same judicial interpretation).
Those who elect only threshold coverage when buying automobile insurance may not recover for noneconomic losses resulting from an automobile accident unless they present evidence of serious injury such as "permanent loss of use of a body ... function." N.J.S.A. 39:6A-8a. That threshold language is almost identical to the language in the Tort Claims Act. In Oswin the plaintiff complained of pain due to soft-tissue injury with questionable objective manifestations. The complaint was not, as here, emotional distress with questionable objective manifestations. The kind of proof necessary to establish the objective manifestations in both cases, however, is closely related if not the same.
The Oswin Court held that manifestations of soft-tissue injury must be objective:
[W]e require objective proof of [soft-tissue injuries].... [E]ven though soft-tissue injuries are not apparent in X-rays, they often manifest themselves in objective form, including swelling, discoloration, and spasm. Because most range-of-motion tests are based only on patients' pain responses, they ordinarily will not suffice unless the restricted mobility is verified by physical examination and observation.
[Id. 129 N.J. at 319-20, 609 A.2d 415]
Applying that test to the similar Tort Claims Act verbal threshold, we conclude that not only must there be verifiable objective manifestations of emotional distress, but those manifestations must be verified "by physical examination and observation" of a physician. Dr. Fox did not claim in his reports that he verified plaintiff's complaints by examination or observation. He simply *198 accepted her complaints as true. Particularly in the area of a patient's state of mind, an expert's opinion is not admissible if it merely parrots what is said by the patient. Saunderlin v. E.I. DuPont Co., 102 N.J. 402, 416-17, 508 A.2d 1095 (1986).
The doctor's reports suffer from another defect that prevents them from being used as evidence to support plaintiff's claims. His stated opinions that plaintiff's reported symptoms were caused by the intrusive search and that they are permanent constitute inadmissible "net opinions" because they are purely conclusory, being unsupported by any explanation of how, from a medical point of view, the search caused the symptoms plaintiff describes and why, from a medical point of view, they are considered permanent. Buckelew v. Grossbard, 87 N.J. 512, 524-25, 435 A.2d 1150 (1981). Inadmissible evidence may not be used to affect the outcome of a summary judgment motion. R. 1:6-6.
Affirmed.