696 A.2d 625

JESSIE COLLINS, PLAINTIFF–APPELLANT, v. UNION COUNTY JAIL, UNION COUNTY BOARD OF CHOSEN FREEHOLDERS, JAIL DIRECTOR WARREN MACCARELLI, CORRECTIONS OFFICER GAYLAND ROBINSON, SUPERVISING LIEUTENANT JOHN DOE 1, SUPERVISION SERGEANT JOHN DOE 2, CORRECTION OFFICERS JOHN DOE 3 THROUGH 5, JOSEPH SALEY, OFFICER OF INTERNAL AFFAIRS, HAROLD GIBSON, DEPUTY COUNTY MANAGER AND DIRECTOR OF DEPARTMENT OF PUBLIC SAFETY, DEFENDANTS–RESPONDENTS.

Argued February 18, 1997—Decided July 15, 1997.

*Edwin J. McCreedy* argued the cause for appellant (*McCreedy and Cox*, attorneys).

*Robert C. Doherty*, Assistant County Counsel, argued the cause for respondents (*James F. Keefe*, County Counsel, attorney).

*Nadine H. Taub* and *George W. Conk* submitted a brief on behalf of amicus curiae, National Organization for Women of New Jersey (*Ms. Taub* and *Tulipan & Conk*, attorneys; *Michelle J. Munsat*, of counsel).

The opinion of the Court was delivered by

COLEMAN, J.

The issue raised in this appeal is whether the verbal threshold provision of the Tort Claims Act ("Act"), *N.J.S.A.* 59:9–2(d), bars a claim of permanent psychological harm in the form of post-traumatic stress disorder caused by the rape of a prison inmate by a corrections officer. The trial court and the Appellate Division both held that absent residual physical injury, the inmate's complaints of post-traumatic stress disorder constituted mere pain and suffering, and thus failed to meet the threshold requirement of *N.J.S.A.* 59:9–2(d). We hold that a post-traumatic stress disorder caused by a rape may constitute a "permanent loss of a bodily function" within the meaning of the Act.

I

In August 1991, plaintiff, Jessie Collins, was an inmate at the Union County Jail in Elizabeth. He was confined to a "pod," which is a living area of the jail, located on the fourth floor. Inmates were restricted to their living areas except when required to attend a consultation, medical examination, or court appearance. An inmate scheduled for a consultation would be "called out" by a pod officer. The pod officer would escort the prisoner to a locked sliding door to exit the living area. At that point, the inmate would be turned over to a movement officer or a "rover." The movement officer would escort the inmate to a consultation area

that was located one floor above the living area. When the consultation was completed, the procedure would be reversed. All such movements were required to be recorded. Under no circumstance was a pod officer to take an inmate out of a living area and into a consultation room.

On August 4, 1991, pod officer Gayland Robinson "called out" plaintiff for a consultation. Robinson escorted plaintiff from his living pod to the floor above and placed him in a holding area leading to the consultation rooms. No movement officer was utilized. Robinson then attempted to fondle plaintiff, but he was interrupted by the sound of another officer in the area. Robinson immediately returned plaintiff to his living area. The logs of plaintiff's pod reflect that this movement was not recorded.

On August 5, 1991, Robinson again called out plaintiff, this time, for a medical examination. Once again, Robinson escorted plaintiff out of the living area without utilizing a movement officer. When plaintiff began to walk to the elevator area that leads to the medical facility, Robinson directed him to walk up the stairs to the consultation area where he had taken plaintiff the previous day. Once there, Robinson began to fondle plaintiff and kiss him. Eventually, Robinson pulled down plaintiff's pants and forcibly sodomized him. Thereafter, Robinson directed plaintiff to return to his living pod. Similarly, the second inmate movement was not logged.

In April 1992, plaintiff instituted suit against Robinson, Union County, and other governmental entities and employees seeking compensatory damages. He also sought punitive damages from Robinson. Plaintiff maintains that as a result of the aggravated sexual assault he suffers from a permanent post-traumatic stress disorder, as diagnosed by a psychologist who treated plaintiff. Plaintiff does not contend, however, that he suffered any physical injury.

Robinson eventually pled guilty to criminal charges of official misconduct in office. He was sentenced to a custodial term of four years. He was also discharged from his job.

In September 1995, the trial court granted Union County's motion to dismiss all claims for compensatory damages and medical expenses against the governmental entities and employees, concluding that plaintiff's injuries did not meet the threshold requirement of the Act. A jury trial on the claims against Robinson resulted in a verdict of $100,000 for compensatory damages, $150,000 for punitive damages, and $3,220 for medical expenses. The judgment against Robinson has been uncollectible to date.

In October 1995, the trial court issued a reported opinion to elaborate on its reasons for dismissing plaintiff's claims against the governmental entities and employees. 291 *N.J.Super.* 318, 677 *A.*2d 285 (Law Div.1995). The trial court concluded that a claim for damages based on a chronic and permanent post-traumatic stress disorder, unaccompanied by any residual physical injury, is barred by *N.J.S.A.* 59:9-2(d). 291 *N.J.Super.* at 321, 677 *A.*2d 285. The trial court held that such a claim is to be treated as pain and suffering, recovery for which is precluded by statute. *Ibid.*

In a published opinion, the Appellate Division affirmed essentially for the reasons stated in the trial court's opinion. 291 *N.J.Super.* 169, 170, 677 *A.*2d 210 (1996). We granted plaintiff's petition for certification, 146 *N.J.* 565, 683 *A.*2d 1161 (1996), and now reverse.

## II

### -A-

■ Plaintiff contends that by barring his claims based on *N.J.S.A.* 59:9-2(d), the trial court and the Appellate Division misconstrued the legislative intent of the statute. Plaintiff asserts that the statute intends to preclude recovery for non-objective injuries resulting from minor incidents. Plaintiff maintains, therefore, that to conclude that a victim of such a heinous and direct assault as an aggravated sexual assault could recover damages only if the rape were accompanied by significant "physical" injury, requires an overly literal reading of the statute.

Plaintiff's argument requires an analysis of *N.J.S.A.* 59:9–2(d). That statute establishes a rule of absolute immunity when the threshold requirement is not met for certain categories of injuries. It provides:

No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00.

[*N.J.S.A.* 59:9–2(d).]

■ We have consistently held that when interpreting a statute, "courts must seek to fulfill the statutory objective 'so far as the terms of the legislation and proper consideration of the interests of those subject to it will fairly permit.' " *State v. Haliski,* 140 *N.J.* 1, 9, 656 *A.*2d 1246 (1995) (quoting *State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966)); *Merin v. Maglaki,* 126 *N.J.* 430, 435, 599 *A.*2d 1256 (1992). A court should interpret a statute in a way that advances "the sense and meaning fairly deducible from the context." *Lesniak v. Budzash,* 133 *N.J.* 1, 14, 626 *A.*2d 1073 (1993).

The focus in this appeal is on the phrase "permanent loss of a bodily function." *N.J.S.A.* 59:9–2(d). That language was incorporated into the Act when it was enacted in 1972. Although the Act does not define the meaning of the pertinent phrase, extrinsic aids, such as legislative history and contemporaneous construction, are useful in ascertaining the intent of the Legislature.

The Act was enacted after the submission to the Legislature of a report by the Attorney General's Task Force on Governmental Immunity in May 1972. When it was enacted, effective July 1, 1972, comments from the Task Force Report were appended to some of the sections of the Act.

The Task Force comment to *N.J.S.A.* 59:9–2(d) explains that

[t]he limitation on the recovery of damages in subparagraph (d) reflects the policy judgment that in view of the economic burdens presently facing public entities a claimant should not be reimbursed for non-objective types of damages, such as pain and suffering, except in aggravated circumstances—cases involving permanent loss of a bodily function, permanent disfigurement or dismemberment

> where the medical treatment expenses are in excess of $1,000. The limitation that pain and suffering may only be awarded when medical expenses exceed $1,000 insures that such damages will not be awarded unless the loss is substantial.
> [*N.J.S.A.* 59:9–2(d) cmt.]

In addition to the Task Force comments, the Legislature's overriding philosophy is that immunity for public entities is the general rule and liability is the exception. *See N.J.S.A.* 59:2–1(a); *Kemp v. State,* 147 *N.J.* 294, 299–300, 687 *A.*2d 715 (1997); *Canico v. Hurtado,* 144 *N.J.* 361, 364, 676 *A.*2d 1083 (1996); *Fielder v. Stonack,* 141 *N.J.* 101, 117, 661 *A.*2d 231 (1995); *Tice v. Cramer,* 133 *N.J.* 347, 355, 627 *A.*2d 1090 (1993). *N.J.S.A.* 59:9–2(d) is consistent with that legislative policy.

What emerges from the Task Force comments and the legislative expressions is an intent that *N.J.S.A.* 59:9–2(d) should preclude recovery for pain and suffering based on subjective evidence or minor incidents. Where, however, there are aggravating circumstances such as the permanent loss of a bodily function, a permanent disfigurement, or dismemberment, and the medical expenses exceed $1,000, recovery for pain and suffering may not be prohibited. Stated another way, the question becomes whether the rape of an inmate by a corrections officer is a sufficiently aggravating circumstance to qualify a permanent post-traumatic stress disorder, without residual physical injury, as a "permanent loss of a bodily function." The first step toward answering that question is an examination of our case law.

This Court has had only one prior occasion in which to interpret the threshold requirements of *N.J.S.A.* 59:9–2(d). In *Ayers v. Township of Jackson,* 106 *N.J.* 557, 525 *A.*2d 287 (1987), the residents of a municipality sued the town for damages sustained when their well water was contaminated by toxic pollutants. *Id.* at 565, 525 *A.*2d 287. The jury returned a verdict in favor of the residents that provided compensation for three distinct claims of injury: emotional distress caused by the knowledge that the residents had consumed contaminated water for up to six years; deterioration of quality of life during the twenty months when the plaintiffs were deprived of running water; and the future cost of

annual medical surveillance that would be necessary to monitor the plaintiffs' increased susceptibility to cancer and other diseases. *Id.* at 565–66, 525 A.2d 287.

The Court held that the residents' emotional distress claims based on possible exposure to carcinogens were not recoverable against the municipality. *Id.* at 576–77, 525 A.2d 287. The Court determined that the subjective symptoms of depression, stress, health concerns, and anxiety described by the plaintiffs "constitute[d] 'pain and suffering resulting from any injury' as that phrase is used in *N.J.S.A.* 59:9–2(d)." *Ayers, supra,* 106 *N.J.* at 576, 525 A.2d 287. The Court concluded, therefore, that although many of the plaintiffs understandably experienced substantial emotional distress as a result of the contamination, "the legislature ha[d] expressly determined that the pain and suffering occasioned by their emotional distress is not compensable by damages" from the municipality pursuant to the Act. *Id.* at 577, 525 A.2d 287.

We find that *Ayers* is clearly distinguishable from the present case. First, the plaintiffs in *Ayers* were not physically violated in any manner. Here, plaintiff was brutally sodomized. The residents' emotional distress in *Ayers* was triggered by fears that they may have consumed contaminated drinking water, not by any direct, violent, and invasive physical assault as occurred in the present case.

Second, the actual claim of injury in *Ayers* differed significantly from the injury alleged in the present case. In *Ayers,* the Court explained that "[m]ost of the plaintiffs' testimony on the issue of emotional distress was relatively brief and general. *Typically, their testimony did not indicate that the emotional distress resulted in physical symptoms or required medical treatment.* No treating physicians testified regarding plaintiffs' emotional distress claims." *Id.* at 572, 525 A.2d 287 (emphasis added). In contrast, the testimony of plaintiff and his treating psychologist in the present case provide strong evidence that plaintiff suffered permanent psychological injury as a result of the sexual assault. Plaintiff testified that since the sexual assault, he suffers from

frequent nightmares, flashbacks, difficulty in sleeping, sudden outbursts of crying, screaming in his sleep, a severe loss of self-esteem, and an inability to trust others. Plaintiff's psychologist, who treated him for over a year after the rape, testified that plaintiff suffers from a post-traumatic stress disorder and that there is a very high probability that the injury is permanent.

There are also several lower court decisions construing the statute. The Appellate Division first confronted the issue in *Marion v. Borough of Manasquan,* 231 *N.J.Super.* 320, 555 *A.2d* 699 (App.Div.1989). In *Marion,* the plaintiffs were walking along a beach when they were stopped by the beach patrol. *Id.* at 323, 555 *A.2d* 699. The plaintiffs were stopped because they had allegedly violated a local ordinance by walking on the beach in bathing attire without a requisite permit. *Id.* at 324, 555 *A.2d* 699. The plaintiffs were taken to the police headquarters for questioning and ultimately released. *Id.* at 323–24, 555 *A.2d* 699.

The plaintiffs subsequently filed suit against the municipality, alleging false arrest and harassment in violation of the Act. *Id.* at 324, 555 *A.2d* 699. The Appellate Division held that even if the arrest was unlawful, the municipality was immune from liability by virtue of *N.J.S.A.* 59:9–2(d), because the plaintiffs had failed to claim any identifiable harm. *Marion, supra,* 231 *N.J.Super.* at 331, 555 *A.2d* 699. The court stated: "Neither plaintiff consulted a health care professional in connection with any personal injury sustained as a result of his detention." *Ibid.* In fact, one plaintiff described the impact of the incident as follows:

> It was a very traumatic experience. It was threatening. I felt like I was totally raped of all my rights that day. That's the last thing I would expect to happen to me and I would hope it would never happen again.... I think about it from time to time.... [T]he same situation could cause me to leave the beach or decide not even to go to the beach.

> [*Ibid.*]

The court concluded that the plaintiffs' claims for damages against the municipality were barred by the Act. *Id.* at 332, 555 *A.2d* 699. There simply were no aggravating circumstances in that case.

In *Srebnik v. State*, 245 *N.J.Super.* 344, 585 *A.2d* 950 (App.Div. 1991), the Appellate Division held that *N.J.S.A.* 59:9–2(d) barred a motorist's claim for emotional distress resulting from her witnessing the death of her injured husband. *Srebnik, supra,* 245 *N.J.Super.* at 352, 585 *A.2d* 950. In *Srebnik,* the plaintiff and her late husband were involved in a car accident. *Id.* at 346, 585 *A.2d* 950. The police were contacted by an eyewitness, but they were unable to locate the car until the next morning. *Id.* at 347, 585 *A.2d* 950. The plaintiff's complaint against the State alleged that the police officers had failed to respond reasonably and promptly to reports of the accident and to make a thorough search of the accident scene. *Ibid.* The plaintiff argued that as a result of the officers' inadequate efforts, her husband's chance of survival was lost and that she suffered permanent emotional and psychological pain from watching him die. *Ibid.*

The court held that

> [i]n light of the *Ayers* holding that emotional distress constitutes "pain and suffering," plaintiff's claim here is barred unless she suffered "permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00." In this regard, it is not disputed that plaintiff's *physical* injuries resulted from the initial accident, the cause of which was not attributable to either defendant.... Plaintiff nevertheless argues that her depression and stress disorder, independent of physical injuries, constitute a "permanent loss of a bodily function" because the condition has "permanently" prevented her from carrying out her ordinary day-to-day functions.
>
> [*Id.* at 349–50, 585 *A.2d* 950 (footnote omitted).]

The court rejected the plaintiff's claim, stating that "[n]either the Act nor *Ayers* equates 'permanent' emotional injury with 'permanent loss of a bodily function.'" *Ibid.* The court stated:

> As we read *Ayers,* it interprets the Act as barring claims involving intangible "subjective symptoms" associated with personal injuries, irrespective of the severity or duration of the symptoms, absent the aggravating circumstances enumerated in the Act.... Therefore, under the *Ayers* rationale, symptoms of depression and stress are "subjective" and "non-objective types of damages," whether temporary or permanent in nature.
>
> Moreover, the term "permanent loss of a bodily function" must be read in conjunction with its associated words "permanent disfigurement or dismemberment." These later words unquestionably pertain to injury to the *physical* components of the body, not the injured party's psyche.
>
> [*Id.* at 350–51, 585 *A.2d* 950 (citations omitted).]

The court dismissed the plaintiff's suit because her distress had not resulted in any physically disabling infirmity: "[T]he residua of the unfortunate emotional trauma constitute the intangible subjective symptoms of depression, stress and anxiety barred by N.J.S.A. 59:9–2d." *Srebnik, supra,* 245 *N.J.Super.* at 352, 585 A.2d 950.

We find that both *Marion* and *Srebnik* are distinguishable because the plaintiffs in those cases were not subject to any direct physical violation. Additionally, *Srebnik's* reliance on *Ayers* for the proposition that *N.J.S.A.* 59:9–2(d) does not equate permanent emotional injury with "permanent loss of a bodily function" is misplaced. *Srebnik, supra,* 245 *N.J.Super.* at 350, 585 A.2d 950. As we have already noted, the emotional injury alleged in *Ayers* was not caused by a physical assault. Rather, the claims in *Ayers* were purely subjective, and were based on the plaintiffs' belief that they may have been exposed to toxins. Here, plaintiff's post-traumatic stress disorder, according to his psychologist, is directly attributable to the sexual assault.

*Randall v. State,* 277 *N.J.Super.* 192, 649 A.2d 408 (App.Div. 1994), and *Thorpe v. Cohen,* 258 *N.J.Super.* 523, 610 A.2d 878 (App.Div.1992), are two other lower court decisions that have addressed *N.J.S.A.* 59:9–2(d). In *Randall,* a prison visitor who was subjected to an intrusive strip search prior to a visit with an inmate, filed an action against prison officials under the Act. *Randall, supra,* 277 *N.J.Super.* at 194–95, 649 A.2d 408. The plaintiff alleged that as a result of the strip search, she suffered from acute post-traumatic stress disorder. *Ibid.* The Appellate Division dismissed the action, stating that "not only must there be verifiable objective manifestations of emotional distress, but those manifestations must be verified 'by physical examination and observation' of a physician" in order to meet the threshold requirement of the statute. *Id.* at 197, 649 A.2d 408. The testifying doctor never claimed in his reports that he had verified the plaintiff's complaints by examination or observation. *Ibid.*

In *Thorpe,* a motorist brought an action for damages against a police officer, police chief, police department, and municipality, after sustaining injuries from excessive force used during a motor vehicle stop. *Thorpe, supra,* 258 *N.J.Super.* at 525, 526, 610 *A.*2d 878. The motorist suffered a chronic lumbosacral sprain as a result of the injury. *Id.* at 525, 610 *A.*2d 878. The court concluded that the plaintiff's "claim for pain and suffering is barred in the absence of an objective injury beyond the type involved" in that case. *Id.* at 529, 610 *A.*2d 878. The court simply determined that the plaintiff's injuries were not sufficiently aggravated to warrant recovery.

Both *Randall* and *Thorpe* are distinguishable from the present case. The injuries that plaintiff alleges to have sustained as a result of the sexual assault are far more serious than the sprained back muscle suffered in *Thorpe.* Furthermore, unlike the doctor in *Randall,* plaintiff's psychologist verified his diagnosis of plaintiff's injuries through a year-long course of evaluation and treatment.

Two lower court cases, *C.P. v. Township of Piscataway Board of Education,* 293 *N.J.Super.* 421, 681 *A.*2d 105 (App.Div.1996), and *A.C.R. v. Vara,* 264 *N.J.Super.* 565, 625 *A.*2d 41 (Law Div. 1992), have addressed the applicability of the threshold requirement of *N.J.S.A.* 59:9–2(d) to instances of sexual assault.

In *C.P.,* an infant plaintiff brought a negligence action against a state entity, alleging that a sexual touching by a swimming instructor had resulted in psychological injury. *C.P., supra,* 293 *N.J.Super.* at 425, 427, 681 *A.*2d 105. As in the present case, no apparent permanent physical injury had resulted from the molestation. *Id.* at 427–28, 681 *A.*2d 105. The Appellate Division held that the plaintiff's claim for emotional distress was barred by *N.J.S.A.* 59:9–2(d) because the medical testimony failed to allege that the child's trauma was of a long-term or permanent nature. *C.P., supra,* 293 *N.J.Super.* at 429, 681 *A.*2d 105. That conclusion was based on evidence from the psychologist who had treated the plaintiff and testified that the problems of the child were transito-

ry and quickly resolved. *Ibid.* The psychologist expected no permanent psychological or physical sequelae from the incident. *Ibid.*

In *A.C.R.*, the infant plaintiffs were sexually assaulted by a teacher and, thereafter, brought suit alleging that the public entities had breached their duty to exercise reasonable supervisory care for the children's safety. *A.C.R., supra,* 264 *N.J.Super.* at 566, 625 A.2d 41. As a result of the alleged breach of duty, the plaintiffs claimed that they had sustained serious and permanent injuries that were both physical and psychological. *Id.* at 566–67, 625 A.2d 41.

The trial court concluded that the sexual molestation of a child is presumed to result in serious physical and mental injury for which damages are recoverable under the Act. *Id.* at 571–72, 625 A.2d 41. The court first distinguished *Ayers* and *Srebnik.* It reasoned that

> the plaintiffs in *Ayers* were never physically violated in any way. There was no tort or assault perpetrated upon any of the plaintiffs. The *Ayers* case was based in nuisance which is derived from the laws of property. Second, the *Ayers* Court was faced with applying the different types of damages available under the Tort Claims Act. It did not specifically interpret the different types of physical injuries that are compensable under the Act.
>
> The *Srebnik* case, *supra,* is not on point with the facts of this case. In this matter the court has dismissed those claims that are factually similar to *Srebnik,* that is, the claims of the parents for emotional distress from observing the suffering of their children arising from the child's injury. In both *Srebnik* and *Ayers* the claims being made were by a party who did not sustain the injury upon which their claim was brought. In *Ayers* it was the contamination of the water, and in *Srebnik* it was the injury to her husband. In this matter the infant plaintiffs have been the victims of sexual assault. They sustained an assault to their body and person. The emotional distress for which they seek damages flow from the injury and assault they sustained.
>
> [*A.C.R., supra,* 264 *N.J.Super.* at 569, 625 A.2d 41.]

The court also held that, for purposes of the motion to dismiss, the children had sustained a medically recognized emotional injury. *Id.* at 569–70, 625 A.2d 41. Therefore, the relevant question was whether the "emotional injury" should qualify as a permanent physical injury that is compensable under the Act. *Id.* at 570, 625 A.2d 41.

The court found that although there was no precedent directly on point, *Atlantic Employers Insurance Co. v. Tots and Toddlers Pre-School Day Care Center, Inc.*, 239 *N.J.Super.* 276, 571 *A.*2d 300 (App.Div.), *certif. denied*, 122 *N.J.* 147, 584 *A.*2d 218 (1990), offered some guidance: "In *Tots and Toddlers*, the issue before the Appellate Court was whether the defendant who was charged with sexually molesting several children in his care had intended to injure the victims thereby excluding such conduct from insurance coverage. The court held that intent to cause injury can be inferred when one commits an act of sexual abuse." *A.C.R.*, *supra*, 264 *N.J.Super.* at 570, 625 *A.*2d 41.

Specifically, the *Tots and Toddlers* court stated: " 'A subjective test suggests that it is possible to molest a child and not cause some kind of injury, an unacceptable conclusion. Certainly, one would and should expect some physical or psychological injury or both, to result from such acts.' " *Ibid.* (quoting *Tots and Toddlers*, *supra*, 239 *N.J.Super.* at 283, 571 *A.*2d 300).

The *A.C.R.* court concluded from that presumption of injury, "that the requirements of *N.J.S.A.* 59:9-2(d) have been met as there is permanent loss of a bodily function and or permanent disfigurement when a child is sexually molested. *This is true even when the injury only manifests itself in psychological symptoms.*" *Id.* at 571-72, 625 *A.*2d 41 (emphasis added). Therefore, the *A.C.R.* court concluded that the sexual molestation of a child creates a presumption that satisfies the threshold requirement of the statute.

The missing link in all of the reported decisions, excepting *A.C.R.*, is an aggravating and intrusive assault that allegedly caused the plaintiff to sustain a permanent psychological injury. That combination of aggravating factors is present in the instant case.

We hold that plaintiff's claim of alleged permanent psychological harm in the form of post-traumatic stress disorder resulting from the rape by the corrections officer, constitutes a "permanent loss of a bodily function" within the meaning of *N.J.S.A.* 59:9-2(d). As

a result of the rape, plaintiff allegedly lost the ability to function in a normal mental state. Plaintiff and his psychologist testified that plaintiff suffers from frequent nightmares, flashbacks, difficulty in sleeping, sudden outbursts of crying, screaming in his sleep, a severe loss of self-esteem, and an inability to trust others. Plaintiff's psychologist testified that those psychological problems are a direct result of the rape and will in all probability afflict plaintiff for the rest of his life.

### -B-

Our research discloses that Pennsylvania is the only other jurisdiction that has a threshold provision in its Tort Claims Act that is similar to New Jersey's, and counsel has cited no other such jurisdictions. Its statute provides:

Damages shall be recoverable only for:

. . . . . . . .

(2) Pain and suffering in the following instances:

(i) death; or

(ii) only in cases of permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.

[42 *Pa. Cons.Stat. Ann.* § 8553(c)(2)(i), –(ii) (West 1982).]

No case, however, has interpreted that statute in the context of the issues presented in the present case.

Nonetheless, post-traumatic stress disorder and its accompanying symptoms have been recognized by other jurisdictions as objective, physical injuries. *See, e.g., Bloom v. Consolidated Rail Corp.,* 41 *F.*3d 911, 915 n. 5 (3d Cir.1994) (asserting that plaintiff demonstrated physical manifestation of injury under Federal Employers' Liability Act through weight loss, loss of sleep, nightmares, vomiting, and diagnosed post-traumatic stress disorder); *Towns v. Anderson,* 195 *Colo.* 517, 579 *P.*2d 1163, 1164 (1978) (en banc) (stating that nightmares, sleepwalking, nervousness, and irritability showed sufficient physical manifestation of injuries); *Daley v. LaCroix,* 384 *Mich.* 4, 179 *N.W.*2d 390, 396 (1970)

(recognizing that weight loss, inability to perform household duties, extreme nervousness, and irritability are facts from which jury could find physical injury). The symptoms recognized as physical injuries in other jurisdictions are the very symptoms that plaintiff allegedly experiences. Similarly, in *Saunderlin v. E.I. DuPont Co.*, 102 *N.J.* 402, 508 *A.*2d 1095 (1986), this Court held that the term "function of the body" under the Workers' Compensation Act, *N.J.S.A.* 34:15–36, that defines permanent partial disability, includes psychiatric harm as a compensable injury. *Saunderlin, supra,* 102 *N.J.* at 410, 508 *A.*2d 1095.

We are satisfied that the Legislature could not have intended that the verbal threshold provision of the Act would bar all psychological claims caused by a rape simply because there was no residual physical injury. To uphold the decision below, would ascribe to the Legislature an indifference to the devastating consequences of rape. Clearly such an indifference does not exist, as evidenced by legislation defining personal injury so as to include psychological harm. Under the New Jersey Code of Criminal Justice, severe personal injury includes "incapacitating mental anguish." *N.J.S.A.* 2C:14–1(f). Thus, severe mental anguish can satisfy the serious bodily harm element for first-degree rape. *State v. Walker,* 216 *N.J.Super.* 39, 43–44, 522 *A.*2d 1021 (App.Div.), *certif. denied,* 108 *N.J.* 179, 528 *A.*2d 10 (1987). The Criminal Injuries Compensation Act permits the payment of compensation to victims of violent crimes who suffered any "actual bodily harm ... includ[ing] ... mental or nervous shock." *N.J.S.A.* 52:4B–2. In addition, the Crime Victim's Bill of Rights defines a victim as "a person who suffers personal, physical or psychological injury." *N.J.S.A.* 52:4B–37.

Given the legislative history of the threshold provision of the Act and other pertinent legislative enactments, it is highly unlikely that the Legislature intended that only the physical injuries resulting from rape are to be compensated under the Act. It is widely known that for the majority of rape victims, the lasting harms are principally psychological rather than physical. The

Legislature explicitly recognized that fact when it enacted the Victim/Counselor Privilege Act which provides that the psychological and emotional injuries of rape "are often more serious than the physical injuries suffered." *N.J.S.A.* 2A:84A–22.13(a); *N.J.R.E.* 517. A psychological injury involves the mind which is as much a part of the body as the back, a leg, a hand, or a finger. Because we are persuaded that the Legislature contemplated that "emotional trauma can be as disabling as a visible physical wound," *State v. J.G.*, 261 *N.J.Super.* 409, 418, 619 *A.2d* 232 (App.Div.), *certif. denied*, 133 *N.J.* 436, 627 *A.2d* 1142 (1993), psychological and emotional injuries should be treated the same as physical injuries under the Act's threshold provision when they arise in a context similar to that which precipitated plaintiff's injuries.

## III

We hold that *N.J.S.A.* 59:9–2(d) does not immunize Union County from liability for the post-traumatic stress disorder from which plaintiff allegedly suffers, and will allegedly suffer permanently, as a result of the rape by the corrections officer. We find that that the alleged debilitating psychological disorder constitutes a "permanent loss of a bodily function" pursuant to *N.J.S.A.* 59:9–2(d). We leave to the trial court on remand to determine whether the severity of plaintiff's injuries can be characterized as "substantial," the threshold standard articulated today in *Brooks v. Odom*, 150 *N.J.* 395, 405–407, 696 *A.2d* 619, 624–625 (1997).

The judgment of the Appellate Division is reversed. The complaint against the governmental entities and public employees is reinstated. The matter is remanded to the Law Division for disposition of the reinstated complaint.

Reversed and remanded.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*For affirmance*—None.