801 A.2d 442 (2002)
353 N.J. Super. 104
Lisa WILLIS, individually and as Administratrix Ad Prosequendum of the Estate of Baby Girl (Aubree Leanna) Willis & David Willis, individually and as Husband of Lisa Willis and father of Baby Girl Willis, Plaintiffs-Appellants,
v.
Eve ASHBY, D.O.; Elias Nemeh, M.D.; Miguel Fernandez, D.O.; Kennedy Memorial Hospital/University Medical Center; and University of Medicine and Dentistry of New Jersey, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 2002.
Decided July 9, 2002.
*443 Jeffrey M. Keiser, Haddonfield, argued the cause for appellants.
Thomas F. Marshall, Mount Holly, argued the cause for respondents University of Medicine and Dentistry of New Jersey, Eve Ashby, D.O., Elias Nemeh, M.D., and Miguel Fernandez, D.O.
Elena B. Zuares, Marlton, argued the cause for respondent Kennedy Memorial Hospital/University Medical Center (Parker, McCay & Criscuolo, attorneys; Stacy L. Moore, Jr., of counsel; Ms. Zuares, on the brief).
E. Drew Britcher, Morristown, argued the cause for amicus curiae ATLA-NJ (Britcher, Leone & Roth, attorneys; Mr. Britcher and Jessica Choper, Trenton, on the brief).
Before Judges KING, CUFF and WINKELSTEIN.
The opinion of the court was delivered by KING, P.J.A.D.
This is an appeal from a summary judgment order dismissing a complaint for damages by parents of a stillborn child against physicians employed by the State and a "public entity" hospital. The Law Division judge ruled that this claim did not satisfy the Tort Claims Act (TCA) threshold for pain and suffering damages: "permanent loss of bodily function, permanent disfigurement or dismemberment." N.J.S.A. 59:9-2(d). We reverse and conclude that the claim of a stillborn birth caused by negligent medical care constitutes an objective and serious consequence which satisfied the TCA's threshold for pain and suffering damages.

I
We discuss only the information pertinent to our decision on the threshold issue. There is no dispute that defendant, the University of Medicine and Dentistry of New Jersey (UMDNJ), was a "public entity" within the meaning of N.J.S.A. 59:1-3, and subject to the TCA's provisions in March 1998, the time of the alleged malpractice causing plaintiff Lisa Willis's post-term C-section delivery of a stillborn baby. Lowe v. Zarghami, 158 N.J. 606, 614, 731 A.2d 14 (1999). The TCA imposes liability on UMDNJ for an employee's negligence. "A public entity is liable for injury proximately caused by an act or omission *444 of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a).
Also, without dispute, defendant-physicians, Drs. Ashby, Nemeth and Fernandez, were employees of UMDNJ and were subject to N.J.S.A. 59:3-1(a): "Except as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person." Ibid. The exception to this principle of liability applies where the employee is entitled to any of the TCA's immunities. N.J.S.A. 59:3-1(b) and (c).
No such immunity attaches to the acts of treating physicians. The TCA immunizes only the public-health activities of physicians and expressly approves of liability for treatment of patients:

Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others....

[N.J.S.A. 59:6-4 (emphasis added).]
See Kemp by Wright v. State, County of Burlington, 147 N.J. 294, 302, 687 A.2d 715 (1997) (discussing the legislative intent of N.J.S.A. 59:6-4).
The judge correctly concluded that defendants were liable for any negligent acts committed in the course of their employment with UMDNJ. The key question on this appeal is whether their liability for the stillbirth is limited by the threshold damage section of the TCA restricting recovery for pain and suffering, N.J.S.A. 59:9-2(d).

II
Plaintiffs argue that the motion judge wrongly ruled they had failed as a matter of law to establish their claim to pain-and-suffering damages under N.J.S.A. 59:9-2(d). They insist that they created a jury question on whether severe psychological injuries caused by the death of their child resulted in the kind of objective physical symptoms required by the cases construing this section of the TCA.
The TCA limits damages which may be awarded for pain and suffering.
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

[N.J.S.A. 59:9-2(d) (emphasis added).]
According to the 1972 Task Force Comment, this section
reflects the policy judgment that in view of the economic burdens presently facing public entities a claimant should not be reimbursed for non-objective types of damages, such as pain and suffering, except in aggravated circumstancescases involving permanent loss of a bodily function, permanent disfigurement or *445 dismemberment where the medical treatment expenses are in excess of $1,000.00. The limitation that pain and suffering may only be awarded when medical expenses exceed $1,000 insures that such damages will not be awarded unless the loss is substantial.

[1972 Task Force Comment, quoted in Harry A. Margolis & Robert Novack, Claims Against Public Entities at 204 (Gann 2002) (emphasis added).]
Based on this Task Force Comment our Supreme Court has interpreted N.J.S.A. 59:9-2(d) as precluding "recovery for pain and suffering based on subjective evidence or minor incidents," but as allowing recovery when "there are aggravating circumstances such as the permanent loss of a bodily function, a permanent disfigurement, or dismemberment, and the medical expenses exceed [$3600]."[1] (emphasis supplied). Collins v. Union County Jail, 150 N.J. 407, 413, 696 A.2d 625 (1997). Ultimately the Court has fashioned this standard into a two-pronged test. A plaintiff must prove "(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." Gilhooley v. County of Union, 164 N.J. 533, 541, 753 A.2d 1137 (2000) (recovery allowed where knee surgically reconstructed); Brooks v. Odom, 150 N.J. 395, 406, 696 A.2d 619 (1997) (non-disabling soft-tissue neck and back injury not compensable under TCA). Accord Kahrar v. Borough of Wallington, 171 N.J. 3, 12, 791 A.2d 197 (2002). We think that this stillborn child claim based on medical malpractice meets both prongs. It is both an objective and a permanent loss.
Emotional distress or psychological harm can qualify as a "permanent loss of a bodily function" when caused by a physical assault such as a violent sodomy or rape. Collins, 150 N.J. at 420-23, 696 A.2d 625. A plaintiff must also show that the psychological injury is both permanent and substantial. Id. at 423, 696 A.2d 625. We conclude that such psychological damage may flow from a negligent tort as well as from an intentional physical assault. Id. at 417, 696 A.2d 625.
Plaintiffs claim that the judge read Collins too narrowly, i.e., he thought that the Collins Court permitted recovery for emotional distress only in cases where the emotional injury was caused by a violent physical assault, such as a rape. In the Law Division, the State contended that absent an invasive physical assault, psychological harm without physical symptoms cannot qualify under N.J.S.A. 59:9-2(d).
As we read the judge's rationale and the parties' arguments, we must resolve two issues. First, treating plaintiffs' injuries as psychological only, did they allegedly meet the specialized Collins test: namely, did they sustain permanent and substantial psychological harm as a result of a violent physical assault? Second, treating plaintiffs' injuries as physical Lisa's scarring and alleged inability to have children did they meet the general Gilhooley test: namely, were the injuries permanent and substantial? Plaintiffs allege physical injuries to Lisa only. They characterize David's injuries as limited to anger and depression.
Our Supreme Court has held that parents of a stillborn child may bring a common-law action for negligence.
We are satisfied that our common law has evolved to a point that would recognize *446 a valid cause of action for the emotional injuries suffered by parents in this kind of a case. Parents under such facts would be entitled to claim compensatory damages based on their emotional distress and mental anguish proximately caused by the negligent conduct of their doctor that results in the stillbirth of their baby.

[Giardina v. Bennett, 111 N.J. 412, 420, 545 A.2d 139 (1988).]
See also Carey v. Lovett, 132 N.J. 44, 45, 622 A.2d 1279 (1993) (parental right to recover for emotional distress when medical malpractice resulted in the stillbirth of a baby reiterated); Alexander v. Whitman, 114 F.3d 1392, 1399 (3d Cir.), cert. denied, 522 U.S. 949, 118 S.Ct. 367, 139 L.Ed.2d 286 (1997). However, no action may be brought for the wrongful death of a fetus. Giardina, 111 N.J. at 420, 545 A.2d 139.
In Giardina, Justice Handler's opinion for the Court recognized that "a stillbirth results in infliction of a direct injury to the mother as well as to her unborn child," 111 N.J. at 415, 545 A.2d 139, and that "the mother suffers severe and genuine injuries in the form of emotional distress and mental anguish...." Ibid. The Court concluded that "the injury suffered by the mother and father on the stillbirth of their eagerly expected first child is palpable and predictable," ibid., and that "a birth attended by tragedy, present[s] a compelling case for recognition of the direct injury to the parents...." Id. at 417, 545 A.2d 139. "In a case such as this, the defendant's alleged malpractice results in serious and devastating loss to the parents, the death of their eagerly expected healthy baby, and, predictably, engenders emotional distress and mental anguish." Ibid. "The emotional distress suffered by the parents in a case such as this, the shocking experience of their healthy infant's stillborn, is similarly severe." Id. at 418, 545 A.2d 139.
Current medical literature agrees with Justice Handler's observations about the potential severity of emotional damage from pregnancy losses. In James R. Woods, Jr., M.D., and Jenifer L. Esposito Woods, M.B.A., Loss During Pregnancy or in the Newborn Period: Principles of Care With Clinical Cases and Analyses 5 (Jannetti 1997), the contributing authors state: "Yet, only very recently have the full impact and consequences of pregnancy loss become appreciated" in contrast to the loss of a spouse, parent or child. The authors remark that:
Any examination of the response to loss must acknowledge the numerous forms which grief and mourning may take. This is especially true for pregnancy loss. Given individual circumstances surrounding miscarriage and ectopic pregnancy, stillbirth, or neonatal death, any or all of the following may come into play: real (actual) loss of a person, threatened or impending loss of a person, loss of status (motherhood), damaged self-esteem, and existential loss. Existential loss associated with pregnancy loss frequently has been overlooked, but it can be summed up by the following: "When your parent dies, you have lost your past. When your child dies, you have lost your future." (Luby, 1977, p. 23).
[Id. at 5-6.]
The section of the Woods' collection on the subject treating "Care of Patients after Pregnancy Loss" summarizes the point:
The vast majority of people respond to pregnancy loss, regardless of gestational age, as the death of a baby and the subsequent death of their hopes and dreams. Parents lose not only their child, but also their parental roles, status of pregnancy, and faith in their bodies *447 and/or their genes to do what so seemingly is effortless for the rest of the population. Kowalski (1987) states that perinatal death represents multiple losses to the parent, including loss of a significant person, loss of some aspect of the self, loss of external objects, loss of a stage of life, loss of a dream, and loss of creation. Culturally, the couple whose first pregnancy ends in a loss has not completed their rite of passage into parenthood, which symbolizes adult status (Layne, 1990).

[Id. at 363.]
We do not read Collins, 150 N.J. at 414, 696 A.2d 625, as limiting recovery under N.J.S.A. 59:9-2(d) for psychological injuries due to "direct, violent and invasive physical assault," such as criminal sodomy or rape, in light of Giardina's articulate and understandable recognition of the parents' loss from a negligently-caused full-term stillborn baby. The baby's death, though not an independently actionable wrongful death under Giardina and Lovett, is nonetheless permanent and the memory of the event is doubtless forever. In this context, if plaintiffs present a case for the jury on medical causation of the stillbirth of the child as a result of defendants' negligence, plaintiffs, in our view, have suffered a permanent loss of a bodily function, disfigurement or dismemberment, or in the language of the 1972 Task Force Comment, an "aggravated circumstance," not a "subjective or minor incident." Collins, 150 N.J. at 413, 696 A.2d 625. Of course, the ultimate dollar measure of damages is for the jury with the aid of expert guidance and medical proofs. Plaintiffs' various potential claims asserted in this record, including major depressive disorder, post-traumatic stress disorder, interference with fertility, C-section scar and so forth must await the proofs presented at trial. See Collins, 150 N.J. at 407, 696 A.2d 625.
We conclude that "psychological and emotional injuries should be treated the same as physical injuries under the Act's threshold provision" when they arise in this context of a stillborn infant, see Collins, 150 N.J. at 423, 696 A.2d 625, especially in view of Giardina's recognition of the potential magnitude of the harm. We agree with Judge Steinberg's recent observations in Frugis v. Bracigliano, 351 N.J.Super. 328, 798 A.2d 614 (App.Div. 2002), a child molestation case, where he said:
Here, although the victims were not raped, we conclude that the allegations of sexual abuse or molestation and also being photographed by Bracigliano in a sexual manner are sufficient aggravating circumstances which, if accompanied by a permanent posttraumatic stress disorder, which is substantial, constitutes a "permanent loss of a bodily function" even without residual physical injury. Id. at 413, 696 A.2d 625; see also C.P. by J.P. v. Township of Piscataway Bd. of Educ., 293 N.J.Super. 421, 430-31, 681 A.2d 105 (App.Div.1996) (suggesting that a minor who had been subjected to an act of sexual contact by a swim instructor could cross the verbal threshold, provided plaintiff demonstrates a permanent psychological disability resulting from the molestation); A.C.R. by L.R. v. Vara, 264 N.J.Super. 565, 571-72, 625 A.2d 41 (Law Div.1992) (holding that sexual assault of a minor resulting in psychological harm may be compensable under the TCA, even in the absence of personal injury).
However, we agree with the Board that if there is a factual dispute as to whether plaintiffs' injuries were sufficient to cross the threshold, the jury must decide the issue rather than the *448 judge as a matter of law. Stated another way, the trial court, in its gatekeeping function, determines whether there is sufficient evidence that plaintiffs crossed the threshold to allow submission of the issue to the jury. However, as in all cases where there are factual disputes, the jury renders the ultimate decision. It is the judge's function only to decide if a material dispute of fact exists as to whether plaintiffs crossed the threshold. Gilhooley, supra, 164 N.J. at 545, 753 A.2d 1137; Hammer v. Township of Livingston, 318 N.J.Super. 298, 310, 723 A.2d 988 (App.Div.1999).
Thus, on remand, if there is a factual dispute, the jury, not the judge, must determine whether plaintiffs have sustained a "permanent loss of a bodily function." See N.J.S.A. 59:9-2(d). Simply put, the conflicting expert testimony at trial, at the very least, raised a factual dispute as to whether plaintiffs' psychological injuries were permanent and substantial, and thus rose to a level sufficient to cross the threshold of the TCA. Consequently, on remand, the jury shall be instructed that plaintiffs must prove, by a preponderance of the credible evidence, that they suffered a substantial and permanent loss of a bodily function proximately caused by the Board's conduct. The jury should also be instructed that permanent psychological harm in the form of posttraumatic stress disorder which is substantial may constitute a permanent loss of a bodily function within the meaning of N.J.S.A. 59:9-2(d). Collins, supra, 150 N.J. at 420-21, 696 A.2d 625.
[Frugis, 351 N.J.Super. at 354-55, 798 A.2d 614]
On the plaintiffs' other three claims of error, we find no merit and no reason for a written opinion. R. 2:11-3(e)(1). On these claims of error:
DID THE TRIAL COURT ERR IN NOT BARRING DEFENDANTS FROM ASSERTING DEFENSES UNDER THE TORT CLAIMS ACT BY REASON OF THEIR FAILURE TO ADVISE PLAINTIFFS AT THE TIME OF TREATMENT THAT THEY WERE PUBLIC EMPLOYEES.
DID THE TRIAL COURT ERR IN REFUSING TO RECOGNIZE A NEW CAUSE OF ACTION FOR WRONGFUL DEATH OF AN UNBORN FETUS.
DID THE TRIAL COURT ERR IN DISMISSING PLAINTIFFS' SPOLIATION CAUSES OF ACTION AGAINST DEFENDANT KENNEDY HOSPITAL.
we affirm.
Reversed as to the individual defendants and UMDNJ on the medical negligence counts; affirmed on the spoliation of evidence and wrongful death counts as to all defendants; affirmed as to Kennedy Memorial Hospital.
NOTES
[1] The statute was amended in September 2000 to increase the medical-expenses threshold from $1000 to $3600. L. 2000, c. 126.