231 N.J. Super. 320 (1989)
555 A.2d 699
ANDREW JAMES MARION AND TODD SCHOBEL, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF MANASQUAN; POLICE DEPARTMENT OF THE BOROUGH OF MANASQUAN; JOHN DOE; JOHN ROE; AND JANE SMITH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1988.
Decided March 7, 1989.
*322 Before Judges MICHELS and KEEFE.
Richard B. Livingston argued the cause for the appellant.
*323 Marilyn S. Silvia argued the cause for the respondents, Borough of Manasquan and Police Department of the Borough of Manasquan (Brener, Wallack & Hill, attorneys; Marilyn S. Silvia, on the brief).
KEEFE, J.S.C. (temporarily assigned).
Plaintiffs, Andrew Marion and Todd Schobel, appeal from the entry of two orders by the trial judge. The first order, entered on November 20, 1987, granted summary judgment to the defendants Borough of Manasquan and Police Department of the Borough of Manasquan. (Manasquan) The second order, entered on December 18, 1987, denied plaintiff's motion for reconsideration and for leave to amend the first amended complaint for the purpose of naming specific defendants in place of the "John Doe" defendants named in the original and first amended complaints. We affirm but for reasons other than those stated by the trial judge.
On July 4, 1985, at approximately noon, plaintiffs were walking on the macadam portion of a public walk adjacent to the beach in the Borough of Manasquan. They were approached by a male member of the Manasquan beach patrol who asked them whether they had obtained beach badges. When they replied in the negative, they were detained by the patrolman who then called for the assistance of a female officer who appeared to be the beach patrolman's superior. Plaintiffs were asked for their identification. When they advised the officers that they had none, one plaintiff was permitted to retrieve their identifications from a house they were visiting which was only a short distance away. When the identification was produced to the female officer, plaintiffs saw her copying information onto a summons form. Upon obtaining the information from plaintiffs, the female officer radioed for another police officer who came to the scene in a patrol car. Plaintiffs were escorted to the patrol car by the driver and the female officer. Plaintiffs were not handcuffed but were placed in the rear seat of the patrol car and taken to police headquarters.
*324 At headquarters plaintiffs were placed in separate cells and subsequently interviewed by a detective who took basic information from them but asked them no questions concerning the offense itself. The plaintiffs were eventually released and given a summons for violation of a Manasquan ordinance which apparently requires people who are on the beach walk in "bathing attire" to purchase a beach badge. (Although plaintiffs argue on appeal that the summons was issued to them on the beach walk before they were transported to headquarters, their sworn testimony at depositions was to the contrary.) The entire process, according to Manasquan's records, took approximately two hours.
On August 7, 1985, plaintiffs appeared in municipal court and pleaded not guilty to the summons. They were represented at that time by the attorney who now represents them in this action. The facts surrounding the issuance of the summons were stipulated, whereupon the municipal court judge was asked to determine plaintiffs' guilt based on the stipulation. They were found guilty and fined. Prior to imposing the sentence the municipal court judge addressed each of the beach patrol officers involved. The record reflects that the male beach patrol officer was Timothy McGreevy and the female officer was Sue Graham. In addition, officer Graham identified the driver of the police vehicle as Lt. Trengrove. Plaintiffs did not appeal their convictions.
On August 15, 1986, plaintiffs filed a complaint alleging that they were "unlawfully detained and arrested by the defendants, John Doe, John Roe and Jane Smith, all fictitious names." They further alleged in their complaint that they were also "falsely imprisoned, harassed and ridiculed in violation of [their] civil rights and in violation of the New Jersey Tort Claims Act." No mention was made in the complaint of how John Doe, John Roe and Jane Smith were related to Manasquan nor was there any mention of how Manasquan was liable to the plaintiffs. Plaintiffs sought both compensatory and punitive damages against the "defendants."
*325 Manasquan moved for a dismissal of the complaint for failure to state a cause of action against it. By order dated October 20, 1986, the motion judge (not the one involved in the matters under appeal) dismissed plaintiffs' claims for violation of "Federal Statutes and/or civil rights" and for "punitive damages ... as to the Borough of Manasquan." The order also contained the following provision:
ORDERED that plaintiffs shall have leave to file an Amended Complaint specifically setting forth the alleged relationship between the Borough of Manasquan and the individual defendants named in the Complaint, and identifying by name those individual defendants of which plaintiffs are presently aware, which such Amended Complaint shall be filed within ten (10) days of the date of this Order; ....
On or about November 3, 1986, plaintiffs filed a First Amended Complaint adding the Police Department of the Borough of Manasquan as a defendant. The amended complaint alleged that plaintiffs were "unlawfully detained and arrested by Agents, Servants and Employees of the defendants, Borough of Manasquan and Police Department of the Borough of Manasquan. Their names are unknown and are referred to as defendants, John Doe, John Roe and Jane Smith, all fictitious names." The amended complaint further states: "While arrested and detained, [they were] falsely imprisoned, harrased (sic) and ridiculed in violation of the New Jersey Tort Claims Act." The amended complaint sought compensatory and punitive damages against all defendants.
On or about January 21, 1987, five months before the statute of limitations ran, Manasquan forwarded certified answers to interrogatories to plaintiffs' counsel. The answers and attachments specifically identified the three officers who were involved in the arrest and transportation of plaintiffs to police headquarters. In addition the documents identified all other individuals who were on duty during the period in question.
On September 2, 1987, both plaintiffs were deposed. They were questioned concerning the allegations of the complaint. In connection with their claim that they were harassed and ridiculed, plaintiffs testified that one or perhaps two female *326 police officers, other than the one involved in the arrest, "looked in" on them from time to time while they were detained and commented: "Yeah, they're still here." According to the plaintiffs, this comment was made with laughter and a smirk.
On September 4, 1987, plaintiffs' counsel propounded supplemental interrogatories. It appears that interrogatory number two was designed to elicit the names of the one or two women who may have looked in on the plaintiffs while they were in their cells. Manasquan answered that interrogatory in part as follows:
... Dispatcher Helena Graham or Dispatcher Jeanne Malone may have checked on the prisoners, as per normal procedure, but they cannot recall specific incident. Both were employed for a very short time on date of incident.
The time records attached to Manasquan's first answers to interrogatories reflect that both Graham and Malone were in police headquarters while plaintiffs were there.
Upon completion of the forgoing discovery Manasquan moved for summary judgment advancing several reasons under the New Jersey Torts Claims Act why the motion should be granted. At the end of oral argument the trial judge made the following ruling:
Based on my conclusion that the cause of action set forth in the complaint in relation to these defendants cannot be sustained for reasons of law as indicated by this argument, I conclude that there is no genuine issue of material fact and I grant summary judgment.
This cryptic statement by the trial judge does not fulfill the requirements of R. 1:7-4. However, our review of the record reveals that the trial judge granted summary judgment on the belief that a public entity cannot be liable on the theory of respondeat superior unless the individual public employees who acted wrongfully are identified and made parties to the action.
Thereafter, plaintiffs moved for reconsideration and for permission to amend their complaint to name specific individuals to take the place of the fictitiously named defendants. The trial judge denied the motion to reconsider the merits of her previous decision and denied plaintiffs' application to amend the *327 complaint to name specific defendants. The essence of her opinion was stated as follows:
The delay which I considered to be extra-ordinary under the circumstances in amending the complaint both because of prior judge's order required the amendment and because, as has been pointed out by counsel, the information was available to the plaintiffs sufficiently in time so that they could have amended long since constitute the most important considerations in my view as to why this extra-ordinary relief should not be permitted.
I don't believe the plaintiffs have been denied their day in court by this Court. I think they have been denied their day in Court by their lack of diligence and that their is  they are not entitled to relief sought here. And as I said, I will deny that.
The first issue to be decided is whether the trial judge erred in dismissing plaintiffs' complaint on the grounds that Manasquan could not be liable on the theory of respondeat superior without individual defendants being named and made parties. We conclude that she was incorrect in that result. The Tort Claims Act (Act) provides that:
a. A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.
b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable. N.J.S.A. 59:2-2
Paragraph a. establishes the principle of vicarious liability for public entities resulting from the acts or omissions of public employees so long as the acts or omissions were within the scope of their employment and so long as the public employees themselves were not immune from suit by reason of other provisions of the Act or common law defenses incorporated in the Act by reference. The legislative Comment to the statute acknowledges that the section was the legislative adoption of the New Jersey Supreme Court's decision in McAndrew v. Mularchuk, 33 N.J. 172 (1960) in which the common law concept of respondeat superior was applied to a municipality.
In cases not involving the Act in which a plaintiff seeks recovery on the theory of respondeat superior, there is no requirement that the plaintiff join as a defendant the individual upon whose act or failure to act vicarious liability is predicated. *328 Indeed, the plaintiff has the option to sue the party vicariously liable for the conduct of an agent in one law suit and, thereafter, pursue the agent in a separate suit. In such cases, the concept of mandatory joinder does not apply. McFadden v. Turner, 159 N.J. Super. 360, 364 (1978).
There is nothing in the Act which reflects an intention on the part of the Legislature to change the accepted practice in this State and no case law interpreting the statute signals a departure from established practice. In Flodmand v. Institutions & Agencies Dep't., 175 N.J. Super. 503 (App.Div. 1980), plaintiff brought suit against the State and the Department of Corrections on the theory that the attack by an inmate against the female plaintiff was made possible by the negligence of the State's officers and agents in the operation of a correctional program. Although the titular heads of two State agencies were named in the caption, the employees of the State agencies who were the alleged actual wrongdoers were not named. Respondeat superior liability of the public entity under N.J.S.A. 59:2-2 was discussed in the context of plaintiff's factual allegations without the necessity of naming as parties the specific agents or employees whose conduct was under attack. Likewise, in Myers v. Medford Lakes Bd. of Education, 199 N.J. Super. 511, 516 (1985), we suggested that plaintiff's complaint against two named public entities was fatal, at least in part, only because plaintiff failed to allege respondeat superior as a theory of recovery against them. We said: "Without alleging respondeat superior liability, plaintiff failed to state a cause of action under N.J.S.A. 59:2-2a." Id. We did not suggest that plaintiff was also required to name the specific employees as defendants.
In plaintiffs' first amended complaint in this case, they alleged that they were unlawfully detained and arrested by agents, servants and employees of Manasquan. The complaint further averred that the names of the three employees who effected the unlawful arrest were presently unknown to the plaintiffs. That pleading was all that was required of the *329 plaintiffs to establish, 1) a cause of action for false imprisonment against public employees under N.J.S.A. 59:3-3, and 2) a cause of action against the public entity for vicarious liability under N.J.S.A. 59:2-2.
Having concluded that summary judgment was erroneously granted in favor of Manasquan, we now address the question of whether Manasquan was entitled to the judgment for other reasons. N.J.S.A. 59:3-3 provides:
A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.
If, under the facts of this case, employees of Manasquan can be held liable to the plaintiffs for false arrest or imprisonment, then Manasquan is liable under N.J.S.A. 59:2-2 if the employees' conduct was "within the scope of [their] employment." It is unrefuted that the plaintiffs were arrested and detained and that a complaint-summons was issued to them stemming from a violation of a municipal ordinance concerning the purchase of beach badges. The validity of the ordinance as applied to these plaintiffs is not questioned on this appeal.[1] There is no question in this case that probable cause existed to stop and detain the plaintiffs for the purpose of issuing a complaint-summons for a violation of the municipal ordinance.
Plaintiffs' counsel argues that there is a factual dispute as to when the complaints were issued to the plaintiffs. He argues that the complaints were issued to the plaintiffs on the beach walk and, thus, their subsequent detention, being unrelated to the probable cause for which they were initially stopped and detained, was unlawful. The facts are to the contrary. Both plaintiffs testified in depositions that the complaints were issued to them when they left police headquarters, not on the beach walk.
*330 The question, it seems to us, is not when the complaints were issued but, rather, whether the police had the right to detain plaintiffs beyond the time it took to obtain appropriate identification from them so that a summons could issue. Although this specific question was not presented to the trial judge, we raise it now sua sponte since its resolution is necessary for a complete determination of the matter under review and the facts necessary to resolve it are present in the record. R. 2:10-5.
"A public official may be held liable for false imprisonment where he has acted outside his authority." Lakutis v. Greenwood, 9 N.J. 101, 106 (1952). False imprisonment is the "unlawful restraint upon a man's freedom of locomotion." Earl v. Winne, 14 N.J. 119, 128 (1953). Thus, detention, which may be otherwise lawful in its inception, becomes unlawful when it exceeds that which is appropriate for the circumstances. Manasquan's police officers' power to arrest is governed by N.J.S.A. 40A:14-152, which provides:
The members and officers of a police department and force, within the territorial limits of the municipality, shall have all the powers of peace officers and upon view may apprehend and arrest any disorderly person or any person committing a breach of the peace.
Disorderly persons offenses are only those offenses which are so defined in the New Jersey Criminal Code or other statutes. N.J.S.A. 2C:1-4. Violation of a municipal ordinance is not a disorderly persons offense. Consequently, the police officers' power to detain plaintiffs beyond that which was necessary to obtain identification from them and issue a summons depends solely upon whether the violation of the ordinance can be considered a "breach of the peace." We are unable to find any authority for the proposition that a violation of an ordinance of this nature would be deemed to fit within that category. State v. Hurtado, 219 N.J. Super. 12, 24-25 (Skillman, J. dissenting), Rev'd (on dissent) 113 N.J. 1 (1988). Therefore, the violation of Manasquan's ordinance in this case permitted plaintiffs' detention only to the extent necessary to obtain their identity for the *331 issuance of a summons. The facts in the record before us indicate that the information necessary to issue the summons to plaintiffs was available to the police officers on the beach walk when their identification was produced. It is reasonally inferable from the evidence that their arrest and detention at police headquarters was unjustified and unlawful.
Manasquan argued in its motion for summary judgment that, even if the arrest was deemed to have been unlawful, Manasquan is, nonetheless, immune from liability by reason of N.J.S.A. 59:9-2d. We agree. Neither plaintiff consulted a health care professional in connection with any personal injury sustained as a result of his detention. Plaintiff Schobel described the impact of the incident on him as follows:
It was a very traumatic experience. It was threatening. I felt like I was totally raped of all my rights that day. That's the last thing I would expect to happen to me and I would hope it would never happen again. Extremely bothersome and I think about it from time to time....
It can be bothersome, you know, the same situation could cause me to leave the beach or decide not even to go to the beach.
Plaintiff Marion's testimony on the subject was:
It's been on my mind very much throughout the last two years. It doesn't go a few days that I don't think about it. It's very annoying. As a matter of fact, it's just a mess what happened, I think. It's very unfair, I believe, too.
N.J.S.A. 59:9-2d. Provides in part that:
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00.
The legislative Comment to this section of the statute says:
The limitation on the recovery of damages in sub-paragraph (d) reflects the policy judgment that in view of the economic burdens presently facing public entities a claimant should not be reimbursed for non-objective types of damages, such as pain and suffering except in aggravated circumstances  cases involving permanent loss of a bodily function, permanent disfigurement or dismemberment where medical treatment expenses are in excess of $1,000.00. The limitation that pain and suffering may only be awarded when medical expenses exceed $1,000.00 insures that such damages will not be awarded unless the loss is substantial.
*332 Plaintiffs' testimony, taken as a whole, reflects their emotional reaction and distress stemming from the unlawful detention. The emotional distress did not result in physical symptoms, nor did it require medical or psychiatric treatment. Claims for emotional distress are encompassed by the term "injury" in N.J.S.A. 59:9-2(d). However, the damages flowing from the injury of emotional distress "can fairly be described as pain and suffering." Ayers v. Jackson Tp, 106 N.J. 557, 576 (1987). Pain and suffering, except in the aggravated circumstances described in the statute, are not compensable under the Act. Id. at 577. In Ayers, plaintiffs contended that they suffered emotional distress, anxiety, fear and depression as a result of their long term exposure to contaminated water. The Supreme Court affirmed this court's holding that plaintiffs' claims for emotional distress were barred by the statute. It said:
We have no doubt, based on our review of the record, that many of the plaintiffs understandably experienced substantial emotional distress as a result of the contamination of their water supply. However, the legislature has expressly determined that the pain and suffering occasioned by their emotional distress is not compensable by damages from Jackson Township. The New Jersey Torts Claims Act bars the recovery of such damages. Id. at 577.
Other cases have come to similar results in slightly different factual settings. Acevedo v. Essex County, 207 N.J. Super. 579, 588 (Law.Div. 1985) (father who sought emotional distress damages based upon his alleged viewing of son's body after it had been exhumed was barred); Dlugosz v. Fred S. James & Co., 212 N.J. Super. 175, 185 (Law.Div. 1986) (former police officer who sought emotional distress damages based upon wrongful discharge in violation of prohibition against discrimination for seeking workers' compensation benefits was barred); American Mercado v. State, 212 N.J. Super. 487, 493-494 (Law. Div. 1985) (parents who sought emotional distress damages resulting from distress, anxiety, and embarrassment stemming from placement of their two children in foster home was barred). Thus, we conclude that plaintiffs' claim for damages against Manasquan and the public employees for compensatory damages is barred by the Act.
*333 However, this does not end the inquiry because plaintiffs have also made a claim for punitive damages. Such damages may not be awarded against a public entity. N.J.S.A. 59:9-2c. However, no such immunity exists for public employees. Moreover, in a false imprisonment case, punitive damages may be awarded even where there are no compensatory damages. Barber v. Hohl, 40 N.J. Super. 526, 534 (App.Div. 1956); Zalewski v. Gallagher, 150 N.J. Super. 360, 369 (App.Div. 1977). Because a cause of action for punitive damages arguably can be made out against those employees who were involved in effecting plaintiffs' unlawful detention, we now consider whether the trial court erred in denying plaintiffs' application to amend the complaint to substitute real names for the fictitious defendants used in the pleadings. We conclude that the trial judge was correct in denying plaintiffs' application. When plaintiffs moved to amend their complaint they sought to add Helena Graham and Jean Malone. They were allegedly the female officers who looked in on the plaintiffs from time to time while they were in the cells. Plaintiffs also sought to join Lt. John Trengrove, who transported them from the beach to police headquarters, and beach patrol officer Timothy McGreevey who initially stopped plaintiffs on the beach walk. For unexplained reasons plaintiffs did not attempt to name Sue Graham, the beach patrol officer who took over from McGreevey and summoned Trengrove to the scene. The motion to amend was made after the statute of limitations had run as to the proposed defendants. Therefore, plaintiffs' claim is time barred unless saved by the provisions of R. 4:26-4 and case law interpreting it. The rule provides that:
In any action, irrespective of the amount in controversy ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. Plaintiff shall on motion, prior to judgment, amend his complaint to state defendant's true name, such motion to be accompanied by his affidavit stating the manner in which he obtained that information.
*334 The first prerequisite to a fictitious name designation in a pleading is that the true identity of the defendant be "unknown" to the plaintiff. Plaintiffs' motion to amend was not accompanied by a certification stating when and the manner in which the identity of the named defendants were made known as required by the rule. Nonetheless, we are satisfied that the identity of Timothy McGreevey and Lt. Trengrove was known to plaintiffs as early as August, 1985.
Helena Graham and Jean Malone, as noted earlier, were allegedly the two individuals who occasionally looked in on the plaintiffs while they were in the cells. We deduce from plaintiffs' argument that their claim against Graham and Malone is based upon the fact that the two officers "smiled" and "smirked" at them on several occasions during their confinement. There is no proof that Graham or Malone had anything to do with plaintiffs' detention or confinement at police headquarters. The effort to join them borders on frivolity. Notwithstanding that, R. 4:26-4 requires that the complaint contain "an appropriate description sufficient to identify" the fictitious persons. We observe that the first amended complaint fails to describe these two female officers and their participation in the events of July 4, 1985. Moreover, we are of the view that a careful reading of Manasquan's answers to interrogatories, served well before the statute of limitations expired, would have provided their identity to plaintiffs' counsel so that a timely motion to amend could have been made. Rutkowski v. Liberty Mut. Ins. Co., 209 N.J. Super. 140, 147 (App.Div. 1986); Miletta v. Doe, 158 N.J. Super. 550, 555 (Law.Div. 1978).
In Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973) a plaintiff was allowed to amend the complaint in which he had used the fictitious name practice after the expiration of the statute of limitations because, through no fault of his own, he did not discover the identity of the correct defendant until the statute had run. Nonetheless, in that case the Supreme Court recognized the important competing interest of the statute of limitations when it said:

*335 When the plaintiff knows or has a reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his actions. Id. at 115.
Plaintiffs cite Viviano v. CBS, Inc., 101 N.J. 538 (1986) for the proposition that amendments to the complaint subsequent to the expiration of the statute of limitations are freely granted in the interest of justice. We, of course, have no quarrel with the holding in that case but believe that the principles announced therein are inapposite to the subject case. In Viviano, the Court specifically found that a named defendant had misled and deceived the plaintiff and had otherwise caused undue delay in the discovery process. Id. at 544. This deception by one defendant had, according to the court, caused the plaintiff's delay in naming the proper defendant. No such deception occurred here. Manasquan was prompt in answering interrogatories and forthright in its answers.
Finally, plaintiffs argue that the key to relaxation of the requirements of R. 4:26-4 hinges on the absence of prejudice to the defendants. Thus, plaintiffs contend that individual defendants may be named after the period of limitations has expired so long as there is no showing of prejudice to them by reason of the late joinder. Such a broad proposition is not substantiated by any case decided by this court or the Supreme Court and ignores the holding in Farrell. However, prejudice may very well exist in this case if the individual defendants are permitted to be joined at this time. As noted earlier, the individual defendants may be subject to punitive damages if they are found liable for false imprisonment. The municipality is not required to indemnify them for those damages. N.J.S.A. 59:10-4. Therefore, if we now permit the late amendment the individual defendants may be liable to the plaintiffs without indemnification. On the other hand, if they are protected by the statute of limitations they have no such exposure. The prejudice to them is obvious under these circumstances. Because neither *336 they nor their employer did anything to conceal their identities they are entitled to protection by the statute of repose.
In conclusion we affirm the order of November 20, 1987, granting summary judgment to the defendants, Borough of Manasquan and Police Department of the Borough of Manasquan. We also affirm the order of December 18, 1987 denying plaintiffs' motion for reconsideration and for leave to amend the first amended complaint in order to name the individual defendants.
NOTES
[1] The subject ordinance was upheld as being a reasonable exercise of the municipality's police function in Sea Watch Inc. v. Borough of Manasquan, 186 N.J. Super. 25 (App.Div. 1982).