720 A.2d 645 (1998)
316 N.J. Super. 487
Arthur WILDONER, Plaintiff-Appellant,
v.
The BOROUGH OF RAMSEY, Ramsey Police Department, Officer Kane Zuhone and Officer Brian[1] O'Donahue, Defendants-Respondents, and
Helen Gannon and Margaret Diefert, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted October 28, 1998.
Decided December 8, 1998.
*647 Thomas L. Ferro, Ridgewood, for plaintiff-appellant.
Harwood Lloyd, attorneys; (Thomas A. Keenan, of counsel, Hackensack; Christine M. Vanek, on the brief, Oradell).
Before Judges KING, WALLACE and FALL.
*646 The opinion of the court was delivered by WALLACE, Jr., J.A.D.
Plaintiff Arthur Wildoner, a seventy-year-old disabled veteran, was arrested for domestic violence against his wife by defendants police officers, Kane Zuhone and Brian O'Donahue, employees of defendant Ramsey Police Department and of defendant Borough of Ramsey, (together the defendants). Defendant Helen Gannon, a neighbor of plaintiff, reported a disturbance to defendant Margaret Diefert, the manager of the senior citizens' apartment complex where they resided, who in turn called the police. Plaintiff was arrested.
Plaintiff filed suit against each party who played a role in his arrest. He subsequently dismissed his negligence claims against Gannon and Diefert. In his complaint, he claimed that defendants falsely arrested and imprisoned him; mistreated him; improperly obtained a temporary restraining order (TRO) against him; and maliciously prosecuted him for assault. The motion judge granted summary judgment in favor of defendants.
On appeal, plaintiff contends the judge erred in (1) finding probable cause; (2) determining that defendants were immune under 42 U.S.C.A. § 1983; (3) dismissing plaintiff's state tort claims of false arrest and false imprisonment; (4) dismissing his malicious prosecution claim under state and federal law; (5) discounting a finding by the judge who heard the domestic violence matter that the police improperly obtained the TRO against plaintiff; and (6) determining that defendants were immune under N.J.S.A. 59:9-2(d).
We conclude plaintiff raised genuine issues of material facts necessary to determine whether there was probable cause for his arrest and whether defendants were protected by good faith immunity under § 1983. Because plaintiff's claims of false arrest and false imprisonment depend on whether there was probable cause for the arrest, it was error to dismiss those claims and the claim for malicious prosecution. We affirm the dismissal of the state-law claim for damages for pain and suffering against all defendants and affirm the dismissal of the claim for punitive damages and malicious prosecution against the Ramsey Police Department and the Borough of Ramsey.

I
This case arises out of the arrest of plaintiff by Ramsey police officers Kane Zuhone and Brian O'Donahue. Plaintiff and his wife Cecilia resided in a senior citizen complex in Ramsey. On September 15, 1993 Helen Gannon, a neighbor, reported to Margaret Diefert that she heard a disturbance coming from plaintiff's apartment. Gannon claimed she heard plaintiff use loud and abusive language and threaten to throw a knife at Cecilia. Diefert then called the police.
A short while later, Zuhone and O'Donahue arrived at the complex. After speaking with Gannon and Diefert the police knocked on plaintiff's apartment door. Cecilia let the police enter. After interviewing Cecilia, the police arrested plaintiff, obtained a temporary order restraining him from going back to his home, and filed a criminal complaint against him for assault and battery.
Cecilia had not sought a restraining order against plaintiff and checked the block on the *648 Bergen County Domestic Violence Rights Form indicating that "she did not want a restraining order at this time."
The next day, at a hearing on the domestic violence complaint, the temporary restraining order was dismissed with a notation on the order that:
Testimony in Court. No complaint filed by [Cecilia]. Police improperly obtained TRO.
Later, when the assault and battery complaint filed in Ramsey Municipal Court was heard, it was dismissed at the end of the State's case.
In September 1995, plaintiff filed his complaint against defendants alleging assault and battery, intentional infliction of emotional distress, mistreatment, false arrest, false imprisonment and malicious prosecution claiming violations of both state law and 42 U.S.C.A. § 1983. Plaintiff alleged he suffered mental anguish, ridicule and embarrassment, expense incurred in his defense, and deprivation of his civil rights. He sought compensatory and punitive damages, along with costs, interest, and attorney's fees. Defendants answered, denying the material allegations.
Following discovery defendants moved for summary judgment, claiming immunity from suit because the arresting officers acted in good faith and with probable cause. In support of their motion, pursuant to R. 4:46-2, defendants submitted, in part, the following facts:
4. Officers Kane ZuHone and [Brian] O'Donahue of the Ramsey Police Department were dispatched to the Woodlands Senior Homes after receiving a call from Ms. Diefert regarding the domestic situation in the Wildoner's apartment.
5. Officers ZuHone and O'Donahue consulted Ms. Diefert and Ms. Gannon before investigating the Wildoner's residence.
6. Upon the officers' arrival, Mrs. Wildoner admitted the officers into her apartment and told them that Plaintiff had been drinking, and that she did not want him to drive the car.
7. Officers ZuHone and O'Donahue observed a red mark on Mrs. Wildoner's arm.
8. When Mrs. Wildoner was questioned about the red mark on her arm, she pointed to Plaintiff and said, "He did it to me."
9. Mrs. Wildoner reported that her husband had thrown a knife at her.
10. Officers ZuHone and O'Donahue observed a knife on the kitchen floor of the Wildoner's apartment.
11. After being placed under arrest, Plaintiff was wheeled out of the apartment in a wheelchair, covered by a blanket.
12. Complaining of dizziness, plaintiff was driven to the Ramsey Police Station in an ambulance.
13. A criminal complaint charging simple assault (N.J.S.A. 2C:12-1a) was signed by Officer ZuHone against Plaintiff Wildoner.
14. Plaintiff, Cecilia Wildoner, refused to sign a domestic violence complaint.
15. Ramsey Police Officers applied to the Municipal Court Judge for a Temporary Restraining Order. Judge Leddy issued a Temporary Restraining Order for Mrs. Wildoner's protection.
16. Plaintiff was released into the custody of his son, Arthur Wildoner, Jr., a police officer of 21 years.
17. Mrs. Wildoner told her son that her husband threw a knife at her that evening.
18. Plaintiff never mentioned his "treatment" by the Ramsey Police to his son.
Plaintiff disputed many of the facts as alleged by defendants. He referred to Cecilia's deposition of February 11, 1997 where she denied telling the police officers that she had an argument with plaintiff and denied that she had taken plaintiff's car keys from him because he had consumed too much alcohol that day. In fact she said that nothing unusual happened on September 15, 1993, but that she and plaintiff talk loud because plaintiff does not hear very well. Cecilia explained that she hurt her arm attempting to help plaintiff put his pants on after the police arrived. She did not notice the red mark on her arm until the officer pointed it out. Cecilia recalled hearing the officer say: "We'll put ... down your husband did that."
Cecilia also denied telling the officers that plaintiff threw a knife at her, hit her, slapped *649 her, verbally abused her, or that he was intoxicated. Further, she denied seeing a knife on the kitchen floor. She also noted that plaintiff needed a walker or a cane to walk, and said, "I'd give him a push and he'd be down if he ever fought with me." She added, "he would never hit me. He ain't that type. We're married all these years and he couldn't."
Plaintiff also submitted his deposition of February 11, 1997, wherein he stated that he spoke in a loud voice because Cecilia had difficulty hearing but denied he ever attacked her, threw a knife at her, or bruised her. He said at one point when his wife was in the bedroom, he may have dropped his dinner knife on the floor. Plaintiff stated that when the police arrived they pushed Cecilia into the bedroom to talk to her. When they returned one officer asked him about a red mark on Cecilia's arm. Shortly, thereafter, one officer said to the other, "[w]e don't have nothing here" but as they were about to leave, the one officer said "I'm going to try something." The officer then read plaintiff his rights, handcuffed him behind his back and placed him under arrest.
Plaintiff testified that a piece of shrapnel remained in his knee from World War II. He said he never recovered the full use of his knee and for the past eight or nine years he had difficulty bending it. He developed arthritis in his other knee and had difficulty putting weight on his legs. He needed a cane to walk and getting out of a chair took him ten minutes because he needed to grab onto something to pull himself up. He claimed he was physically incapable of attacking his wife on September 15, 1993, because "[s]he could give me a shove and that would be the end of it."
Plaintiff explained that the officers never told him why they were arresting him, and that he did not put up any resistance. He did ask them for permission to put his pants on but the police denied his request. This request was denied. He said the officers obtained a wheelchair, "shoved" him into it, and took him outside where the people laughed at him because he was not dressed. The officers called an ambulance to transport plaintiff to headquarters. He said that his son arrived at headquarters and took him to his home for the night.
Plaintiff claimed that his shoulders and arms were permanently injured and as a result of the officers' rough treatment, he sustained a pulled muscle and a broken blood vessel.
After considering the evidence and the arguments of counsel, the motion judge granted defendants' motion and dismissed plaintiff's complaint. The judge concluded that the police officers acted in good faith and had probable cause to believe that plaintiff had committed an offense. The judge held that defendants were immune from liability under 42 U.S.C.A. § 1983 and N.J.S.A. 59:2-1, 3-3, and 9-2(d).

II
Plaintiff contends the motion judge erred in finding probable cause for his arrest in view of the existence of disputed genuine issues of material fact.
Initially, we note that summary judgment is appropriate if "there is no genuine issue as to any material fact challenged and ... the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A fact issue is genuine if "the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c); Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995). Thus, we view the evidence in the light most favorable to plaintiff, the non-moving party.
42 U.S.C.A. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....
"To establish a claim under section 1983, a plaintiff must prove that the defendant acted under color of state law and that the defendant *650 deprived the plaintiff of a federal statutory or constitutional right." Kirk v. City of Newark, 109 N.J. 173, 185, 536 A.2d 229 (1988) (citation omitted).
Plaintiff argues that his arrest was made pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -33. N.J.S.A. 2C:25-21(a) authorizes a law enforcement officer to arrest an alleged offender "[w]hen a person claims to be a victim of domestic violence," if there is probable cause to believe that domestic violence has occurred, and if the victim is injured, or if a weapon is involved. If the conditions of this subsection are not present, a police officer may still arrest an alleged offender "where there is probable cause to believe that an act of domestic violence has been committed." N.J.S.A. 2C:25-21(b). Plaintiff contends that giving him the benefit of his favorable evidence, his wife never claimed to be a victim of domestic violence and the police lacked probable cause to believe domestic violence had occurred.
N.J.S.A. 2C:25-22, provides:
A law enforcement officer or a member of a domestic crisis team or any person who, in good faith, reports a possible incident of domestic violence to the police shall not be held liable in any civil action brought by any party for an arrest based on probable cause, enforcement in good faith of a court order, or any other act or omission in good faith under this act.[2]
This section protects defendants from liability for an arrest only if the arrest was based on probable cause.
In addition to establishing that defendants acted under color of state law when they arrested him, plaintiff claims a deprivation of his constitutional right to freedom from an unreasonable seizure of his person under the Fourth Amendment of the United States Constitution. An arrest without probable cause is actionable under § 1983. Kirk, supra, 109 N.J. at 185, 536 A.2d 229.
A police officer may defend a § 1983 claim "by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence." Kirk, supra, 109 N.J. at 184, 536 A.2d 229. However, where there are disputed genuine issues of fact upon which the probable cause issue depends, then the issue of probable cause to arrest is a question for the factfinder. Sharrar v. Felsing, 128 F.3d 810, 818 (3rd Cir.1997). ("The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have reasonable cause to arrest.")
The crucial issue under both state law and § 1983 is whether defendant had probable cause to arrest plaintiff. Probable cause exists if at the time of the arrest "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225-26, 13 L.Ed.2d 142, 145 (1964) (citations omitted); see also State v. Waltz, 61 N.J. 83, 87, 293 A.2d 167 (1972) (citations omitted) (probable cause is "more than mere naked suspicion but less than legal evidence necessary to convict.... It has been described by this Court as a `well grounded' suspicion that a crime has been or is being committed.")
It is clear that when an injured victim complains to the police that she was assaulted and identifies her husband as the attacker, there is probable cause to arrest the husband. See Sharrar, supra, 128 F.3d at 818. On the other hand, if the victim does not complain but an informant who is not an eyewitness is the complainant, the informant's "`veracity,' `reliability,' and `basis of knowledge' are all highly relevant in determining the value of his report." Illinois v. *651 Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543 (1983). "Without a basis for determining the reliability of informants' hearsay, there can be no probable cause finding." Siligato v. State, 268 N.J.Super. 21, 30, 632 A.2d 837 (App.Div.1993). The reviewing court must consider the totality of the circumstances. Illinois v. Gates, supra, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.
Accepting as true all of the evidence which supports plaintiff's position, we are satisfied that plaintiff submitted sufficient evidence from which a jury could reasonably find the police lacked probable cause to arrest plaintiff. Defendants' contention that there was probable cause to arrest plaintiff assumes that Cecilia initially reported to the police that she had argued with plaintiff, but subsequently changed her story. However, Cecilia denied she told the police plaintiff attacked her, verbally abused her, or was intoxicated. Cecilia also explained the mark on her arm was not caused by plaintiff and denied there was a knife on the floor. While plaintiff admitted there might have been a knife on the floor, he asserted that he accidentally dropped it.
The remaining evidence was Gannon's report that she heard plaintiff threaten to throw a knife at Cecilia. This might constitute a terroristic threat. The officers investigated this complaint and attempted to confirm Gannon's account by questioning Cecilia. Again, accepting Cecilia's testimony that she denied telling the officers that plaintiff either threatened or attacked her, Gannon's account remained uncorroborated.
In addition, plaintiff's poor physical condition was a circumstance which a reasonable police officer should have considered. Plaintiff, Cecilia, and their son, concurred that plaintiff was physically incapable of inflicting injury upon Cecilia.
In short, plaintiff submitted sufficient evidence to support a finding that a reasonable police officer would not have believed probable cause existed that plaintiff had committed domestic violence. Plaintiff raised genuine issues of material fact to preclude summary judgment.

III
Plaintiff next challenges the motion judge's determination that defendants were entitled to qualified immunity for acts done in good faith under 42 U.S.C.A. § 1983. In finding no abuse of police power, the motion judge reasoned that public employees "charged with protection of the public" must be permitted "to perform their duties unfettered by the litigious whims of certain members of the public while at the same time allowing obvious abuses to be dealt with by the Court."
In Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982) (citations and footnote omitted), the Supreme Court explained the defense of qualified or good faith immunity:
[W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known....
Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.
In Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278 (1986), considering a claim that a police officer caused the arrest of plaintiff by obtaining a warrant without probable cause, the Court commented that the defense of qualified immunity
provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant would issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.
*652 In Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523, 532 (1987), dealing with a warrantless search of plaintiffs' home, conducted because of exigent circumstances, the Court elaborated on this standard: "The relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [defendant's] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. [Defendant's] subjective beliefs about the search are irrelevant."
Our Supreme Court adopted the federal "objective reasonableness" standard when determining whether a law enforcement officer is entitled to qualified immunity. Kirk v. City of Newark, supra, 109 N.J. at 187, 536 A.2d 229 (a reasonable officer could have believed that defendant police detective had probable cause to arrest plaintiff for scalding his girlfriend's child); see also Plummer v. Department of Corrections, 305 N.J.Super. 365, 373, 702 A.2d 535 (App.Div.1997) (corrections officers' arrest of plaintiff, a former inmate, seen on or near state prison grounds, was objectively reasonable); McKinney v. East Orange Mun. Corp., 284 N.J.Super. 639, 651, 666 A.2d 191 (App.Div.1995), certif. denied, 143 N.J. 519, 673 A.2d 277 (1996) (obtaining search warrant and manner of its execution were both objectively unreasonable); Gurski v. New Jersey State Police Dep't, 242 N.J.Super. 148, 159, 576 A.2d 292 (App.Div.1990) (probable cause existed for warrant for search of plaintiff's home but manner in which search was conducted was objectively unreasonable).
Thus a law enforcement officer who acts without probable cause is protected if his or her "decision was reasonable, even if mistaken." Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596 (1991) (citation omitted). Further, we noted in McKinney, supra, at 647, 666 A.2d 191, that "the standard of objective reasonableness is liberally construed in the officer's favor."
The question of qualified immunity is a question of law to be decided by the court as early in the proceedings as possible, because "[t]he entitlement is an immunity from suit rather than a mere defense to liability." Hunter, supra, 502 U.S. at 227, 112 S.Ct. at 536, 116 L.Ed.2d at 595 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 425 (1985)); see also Kirk, supra, 109 N.J. at 182, 536 A.2d 229.
In Sharrar, supra, the court addressed the "`tension ... as to the proper role of the judge and jury where qualified immunity is asserted.'" 128 F.3d at 826 (citations omitted). The court held that the issues of whether the law is clearly established and whether the actions of the officers were objectively reasonable are both to be decided by the court, but added: "Only if the historical facts material to the latter issue are in dispute ... will there be an issue for the jury." 128 F.3d at 828.
We apply there principles to the case here. Neither side contends the law regarding probable cause to arrest plaintiff was not clearly established. However, as noted above, the historical facts necessary to decide whether the officers' actions were objectively reasonable are in dispute. If the officers' versions are credited there is no doubt they had probable cause to arrest plaintiff and their actions were objectively reasonable. On the other hand, if plaintiff's version is believed, the police would not have had an objectively reasonable belief there was probable cause to arrest plaintiff. Because there are essential underlying historical facts in dispute, a jury must decide the issue of qualified immunity.
Defendants nevertheless contend they are entitled to qualified immunity because plaintiff failed to prove "conduct beyond mere negligence." Vallejo v. Rahway Police Dep't, 292 N.J.Super. 333, 347, 678 A.2d 1135 (App.Div.), certif. denied, 147 N.J. 262, 686 A.2d 763 (1996). In Vallejo, plaintiff suffered brain damage when he attempted suicide while imprisoned by defendants. There plaintiff's claim under § 1983 was based on a failure to train officers in suicide prevention and to provide him with medical care. We held that at most this was a case of negligence and dismissed the claim. Id. at 348, 678 A.2d 1135.
*653 Defendants also rely on Fielder v. Stonack, 141 N.J. 101, 117-30, 661 A.2d 231 (1995), where our Supreme Court held that police officers are immune from liability under N.J.S.A. 59:5-2(b)(2), when, in pursuit of a fleeing automobile, their vehicle collides with an innocent third party's vehicle. The Court commented that defendants might still be liable on a federal due process claim if plaintiffs can show more than "mere negligence" on the part of the officers. Id. at 133, 661 A.2d 231.
Contrary to defendants' contention, the actions of the officers could be found to be more than mere negligence which accidentally or inadvertently caused harm to plaintiff. If plaintiff's evidence is believed then the police officers intentionally arrested plaintiff knowing that they lacked probable cause to arrest him. Under these circumstances, it was error to decide the issue of qualified immunity as a matter of law.

IV
Plaintiff contends the judge erred in dismissing his claims of false arrest and false imprisonment on the ground that defendants were immune from liability under N.J.S.A. 59:2-1 and 3-3.
N.J.S.A. 59:2-1(a) provides: "Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."
N.J.S.A. 59:3-3 provides: "A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." The 1972 Task Force Comment under this section explains that:
This section does not, however, immunize law enforcement officials from false arrest and false imprisonment. It is recognized that law enforcement officers are not now immune in the State of New Jersey and it is believed that existing principles of law provide sufficient protection for the officer from frivolous suits. Therefore it is the intent of this section to emphasize the importance of compensating a citizen whose freedom has been unreasonably restricted.

[N.J.S.A. 59:3-3 (comment).]
In Hayes v. County of Mercer, 217 N.J.Super. 614, 618-19, 526 A.2d 737 (App.Div.), certif. denied, 108 N.J. 643, 532 A.2d 226 (1987), plaintiff was arrested and defendants commenced an extradition proceeding against him, but the action was dismissed when the victim could not identify plaintiff. We determined that the investigator's conduct was objectively reasonable, and he was thus entitled to qualified immunity under § 1983. Id. at 621, 526 A.2d 737. We further adopted "the objective good-faith standard" of Harlow v. Fitzgerald, supra, for the good-faith defense set forth in the first sentence of N.J.S.A. 59:3-3. 217 N.J.Super. at 622-23, 526 A.2d 737. However, we noted that this section "withholds the defense of subjective good faith where the claim ... is for `false arrest or imprisonment.' Id. at 622-23, 526 A.2d 737.
To be sure, probable cause is a defense to claims of false arrest and false imprisonment. Hayes, supra, 217 N.J.Super. at 623, 526 A.2d 737. However, as noted above, the issue of whether defendants had probable cause to arrest plaintiff must be decided by the factfinder. Therefore, it was error to conclude that defendants were immune from liability under N.J.S.A. 59:3-3.

V
Plaintiff next contends the motion judge erred in dismissing his claim of malicious prosecution because Zuhone's complaint against him for simple assault was later dismissed at trial.
In an action for malicious prosecution, plaintiff "must show that the suit was brought without reasonable or probable cause, that it was actuated by malice, and that it terminated favorably to the plaintiff." Penwag Property Co., Inc. v. Landau, 76 N.J. 595, 598, 388 A.2d 1265 (1978) (citation omitted). The plaintiff must also establish a special grievance, other than counsel fees and costs necessary to the defense, which *654 "consists of interference with one's liberty or property." Ibid. (citation omitted).
N.J.S.A. 59:3-8 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." The 1972 Task Force Comment to this section states that "the immunity does not extend to conduct ... constituting actual malice ... or willful misconduct. See § 59:3-14."
N.J.S.A. 59:3-14(a) provides: "Nothing in this act shall exonerate a public employee from liability if it is established that his conduct ... constituted ... actual malice or willful misconduct." Although a public employee is generally not liable for injury caused by his prosecuting any judicial proceeding, N.J.S.A. 59:3-8, this provision does not apply if the employee's conduct constituted actual malice or willful misconduct. N.J.S.A. 59:3-14(a). Here, plaintiff has raised a genuine issue of material fact regarding whether the officers' acted with malice or willful misconduct.
Further, malicious prosecution is a constitutional tort actionable under § 1983. In James v. Price, 602 F.Supp. 843, 845 (D.N.J.1985), plaintiff alleged that malicious prosecution of a criminal offense was a deprivation of his liberty without due process. The court held that defendants were not entitled to immunity under Harlow v. Fitzgerald, supra, because, "at least within the District of New Jersey, the right to be free from malicious prosecution is `clearly established.' " 602 F.Supp. at 847.
Here, defendants do not contest plaintiff's assertion that the criminal complaint was dismissed at the close of the State's case. Viewing the evidence favorably to plaintiff, a reasonable factfinder could conclude the officers acted with malice in arresting him without probable cause and in obtaining a temporary restraining order against the wishes of Cecilia. Consequently, we conclude that plaintiff submitted sufficient evidence to raise a material issue of fact regarding the officers' malice in prosecuting him. It was error to summarily dismiss plaintiff's claim for malicious prosecution.

VI
Plaintiff next contends that the motion judge improperly rejected the notation on the order vacating the TRO that "[p]olice improperly obtained TRO." Specifically, plaintiff contends this "ruling is binding on this proceeding under the principle of collateral estoppel." We disagree.
In order for collateral estoppel to apply;
the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
[In re Dawson, 136 N.J. 1, 20, 641 A.2d 1026 (1994) (citations omitted).]
Here, the prior proceeding, captioned Cecilia Wildoner v. Arthur Wildoner, which resulted in the vacation of the temporary restraining order apparently consisted solely of Cecilia's testimony, because the judge checked boxes on the form order indicating that he had considered plaintiff's "certification and/or affidavit" and noted "testimony in court." The order of September 16, 1993, is the only portion of this proceeding that is in the record. Thus, it cannot be determined whether the issue of the officers' propriety in obtaining the restraining order was litigated. In any event, none of the defendants here were parties to or in privity with parties to the domestic violence proceeding. Consequently, the motion judge properly rejected plaintiff's attempt to use collateral estoppel.

VII
Plaintiff finally contends the motion judge erred in determining that N.J.S.A. 59:9-2(d) precluded his claims.
N.J.S.A. 59:9-2(d) provides:

*655 No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.
Plaintiff submitted no evidence of his medical treatment expenses and submitted no medical evidence that he suffered any permanent loss of a bodily function.
Nevertheless, plaintiff contends that section 9-2(d) applies only to pain and suffering resulting from a physical injury and does not apply to pain and suffering resulting "from an injustice, deprivation of constitutional rights and loss of liberty." This view has been rejected. See Ayers v. Township of Jackson, 106 N.J. 557, 565, 525 A.2d 287 (1987), ("the subjective symptoms of depression, stress, health concerns and anxiety described by the plaintiffs and their expert witness constitute `pain and suffering resulting from any injury' and the Tort Claims Act bars recovery for such damage.")
Plaintiff also contends that he should be permitted to assert his claim of punitive damages against the officers, even in the absence of compensatory damages. Defendants argue that an award of punitive damages against the officers is barred by N.J.S.A. 59:3-1(c) which bars liability of public employee where the public entity is immune from liability.
The case of Marion v. Borough of Manasquan, 231 N.J.Super. 320, 323-24, 555 A.2d 699 (App.Div.1989), is instructive. There, plaintiffs claimed they were unlawfully arrested and detained for walking on a beach without a beach badge. We determined that their claims of emotional distress amounted to pain and suffering and were barred by N.J.S.A. 59:9-2(d). Id. at 332, 555 A.2d 699. However, we noted that although punitive damages could not be awarded against a public entity under N.J.S.A. 59:9-2(c), "no such immunity exists for public employees." Id. at 333, 555 A.2d 699. Moreover, we noted that "in a false imprisonment case, punitive damages may be awarded even where there are no compensatory damages." Ibid. (citations omitted).
Here, a factfinder, crediting plaintiff's evidence, could conclude the officers' conduct in arresting and handcuffing plaintiff was wantonly reckless or malicious. See Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49, 477 A.2d 1224 (1984) ("To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an `evil-minded act' or an act accompanied by a wanton and wilful disregard of the rights of another"). Furthermore, counsel fees incurred in defending a false complaint are a part of the damages for a malicious prosecution claim. See Penwag Property Co., supra, 76 N.J. at 598, 388 A.2d 1265 ("[c]ounsel fees and costs in defending the action maliciously brought may be an element of damage in a successful malicious prosecution").
Consequently, we affirm the determination that N.J.S.A. 59:9-2(d) precluded an award of compensatory damages. However, plaintiff may maintain his claims for punitive damages against O'Donahue and Zuhone.
We reverse in part and remand for further proceedings consistent with the views expressed herein.
NOTES
[1] Respondents' brief incorrectly identifies Brian O'Donahue as Ryan O'Donahue.
[2] The version of this statute in effect in September 1993 did not contain the language "or any person who, in good faith, reports a possible incident of domestic violence to the police." These additional words were added by L.1994, c. 94, § 2, effective August 11, 1994. The clear intent of the amendment was to expand the immunity by enlarging the class of persons covered to include persons who report, in good faith, a possible incident of domestic violence to the police.