974 A.2d 1110

STATE OF NEW JERSEY IN THE INTEREST
OF R.M., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 10, 2009—Decided July 20, 2009.

Before Judges SKILLMAN, GRAVES and GRALL.

*Yvonne Smith Segars,* Public Defender, attorney for appellant R.M. (*Abby P. Schwartz,* Assistant Deputy Public Defender, of counsel and on the brief).

*Luis A. Valentin,* Monmouth County Prosecutor, attorney for respondent State of New Jersey (*Mary R. Juliano,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

R.M., a juvenile, was found guilty of an act of delinquency which, if committed by an adult, would constitute receiving stolen property, in violation of *N.J.S.A.* 2C:20-7(a). The trial court sentenced the juvenile to a one-year term of probation and imposed the statutorily mandated penalties. On appeal, the juvenile's only argument is that the stop and search that revealed the stolen property, a wallet, violated his rights under the Fourth Amendment and Article I, paragraph 7, of the New Jersey Constitution. We reject this argument and therefore affirm the denial of the juvenile's motion to suppress and the adjudication of an act of delinquency.

The stop and search that revealed the stolen wallet in the juvenile's possession occurred in Hazlet around 2 a.m. on November 10, 2006, which was three hours after an 11 p.m. curfew for juveniles established by municipal ordinance. Patrolman Kevin Geoghan was driving a marked police car when he observed R.M. and another juvenile run across the street in front of a car, which caused the driver to brake. Officer Geoghan stopped his car and approached the two juveniles. Because they appeared to be young, he asked them how old they were, and they responded sixteen. Geoghan asked the juveniles whether they had any identification on them, and they said no.

While Geoghan was questioning the juveniles, he noticed that R.M. was carrying a backpack with an outer mesh pocket. When Geoghan first asked R.M. about the backpack, he said it belonged to him.

Geoghan then noticed that there was a brown wallet visible through the mesh in the outer pocket of the backpack. Since the

juveniles had said that they did not have any identification and most persons carry some form of identification in their wallet, Geoghan told the juveniles he needed to examine the wallet to determine whether it contained any identification. At this point, R.M. said the backpack did not belong to him but rather to his brother, and that he did not know who the wallet belonged to. Geoghan told R.M. that he needed to examine the wallet and removed it from the backpack. Geoghan's examination of the contents of the wallet disclosed that it contained the identification of a person named Mazza. When Geoghan questioned the juveniles about this identification, they both stated that they did not know Mazza.

Geoghan next examined the inside of the backpack, which contained a cell phone, sweatshirt and a zip-lock bag containing photographs. R.M. told Geoghan those items all belonged to him.

After discovering Mazza's wallet inside the backpack, Geoghan brought both juveniles to police headquarters "to be processed for the curfew violation, and so that [he] could further investigate the wallet and its contents." Geoghan conducted a computer check at headquarters, which disclosed that Mazza had reported two days before that his wallet had been stolen. Geoghan then arrested R.M. for a violation of the municipal curfew ordinance and receiving stolen property.

The trial court concluded that Officer Geoghan's observations of the juveniles' jaywalking, their admission when he first approached them that they were under the age that subjected them to the 11 p.m. municipal curfew, and R.M.'s conflicting answers regarding ownership of the backpack, gave Officer Geoghan the reasonable and articulable suspicion that the juveniles were engaged in unlawful conduct required for a *Terry* investigative stop. The court also concluded that the seizure of the wallet in the backpack was valid because the juveniles relinquished any "reasonable expectation of privacy" with respect to the wallet when they both disclaimed any property interest in it. In addition, the court concluded that the juveniles' actions and responses to Officer

Geoghan's questions provided probable cause to arrest them for the curfew violation.

On appeal, defendant does not present any argument regarding Officer Geoghan's investigative stop of the juveniles. In any event, we are satisfied, substantially for the reasons stated by the trial court, that the stop was valid. We therefore turn to defendant's arguments regarding the validity of the seizure of Mazza's wallet from the mesh pocket of R.M.'s backpack.

Defendant argues that the trial court's rationale for upholding the validity of the seizure of Mazza's wallet—that the juveniles relinquished any reasonable expectation of privacy in the wallet by disclaiming ownership or other proprietary interest—is inconsistent with *State v. Johnson*, 193 *N.J.* 528, 551–52, 940 *A*.2d 1185 (2008), which held that a disclaimer of ownership of property in response to police questioning does not constitute an abandonment that allows the police to seize the property without probable cause. The State argues that this case is distinguishable from *Johnson*, and in any event, *Johnson* should not be applied retroactively. We have no need to consider the State's arguments regarding the applicability of *Johnson* because we conclude that Officer Geoghan's seizure and subsequent search of Mazza's wallet was valid as a search incident to R.M.'s arrest pending his identification and return to his parents' custody.

One exception to the warrant requirement of the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution is for a search incident to an arrest. *State v. Dangerfield*, 171 *N.J.* 446, 455–56, 795 *A*.2d 250 (2002). "The purpose of such a search is (1) to protect the arresting officer from any danger and (2) to prevent the destruction or concealment of evidence." *Id.* at 461, 795 *A*.2d 250. Consequently, "[t]he scope of [such a] search is restricted to the person of the arrestee and the area within his or her immediate control." *Ibid.* Before a search incident to arrest may be conducted, there must be probable cause to arrest the person, which requires a showing of a "well grounded suspicion" that an offense has been or is being committed. *Id.* at 456, 795

*A.*2d 250 (quoting *State v. Sullivan,* 169 *N.J.* 204, 211, 777 *A.*2d 60 (2001)).

Both R.M. and his companion admitted to Officer Geoghan when he first approached them that they were under the age that subjects a juvenile to the municipal curfew.[1]  Therefore, Officer Geoghan had probable cause to believe that R.M. had violated the curfew ordinance, and the officer's questioning of the juveniles indicated that their presence on the street at 2 a.m. did not fall within any of the exceptions to the ordinance.

R.M. argues, relying upon *State v. Hurtado,* 113 *N.J.* 1, 549 *A.*2d 428 (1988), *rev'g on dissent* 219 *N.J.Super.* 12, 23–25, 529 *A.*2d 1000 (App.Div.1987), that the police had no authority under *N.J.S.A.* 40A:14–152 to arrest him for a violation of the curfew ordinance because his conduct did not involve a "breach of the peace."  However, R.M. is a juvenile.  Thus, he could be taken into custody under the authority of *N.J.S.A.* 2A:4A–31(b)(2), which authorizes a law enforcement officer to take a juvenile into "short-term custody" if he "has reasonable grounds to believe the juvenile has left the home and care of his parents or guardian without the consent of such persons."  Since Officer Geoghan found R.M. and his companion wandering the streets three hours after the curfew, and the curfew ordinance makes it unlawful for a parent or guardian to permit a juvenile to violate the curfew, Officer Geoghan had reasonable grounds to conclude that R.M. had left home without his parents' consent.  Therefore, he was authorized by *N.J.S.A.* 2A:4A–31(b)(2) to take R.M. into custody.

Moreover, both juveniles told Officer Geoghan that they did not have any identification in their possession.  Consequently, even if the juveniles' violation of the curfew ordinance did not provide grounds for their arrest, they could be temporarily detained for the purpose of obtaining verification of their identities, *see State v. Lark,* 163 *N.J.* 294, 296–97, 748 *A.*2d 1103 (2000); *Marion v.*

---

[1] We note that *N.J.S.A.* 40:48–2.52(b)(1) specifically authorizes municipalities to adopt curfew ordinances.

*Borough of Manasquan,* 231 *N.J.Super.* 320, 330–31, 555 *A.*2d 699 (App.Div.1989); *Hurtado, supra,* 113 *N.J.* 1, 549 *A.*2d 428, *rev'g on dissent* 219 *N.J.Super.* at 23, 529 *A.*2d 1000, and if they failed to produce identification, they could be arrested and detained at police headquarters until adequate evidence of their identities was obtained. *See Illinois v. Lafayette,* 462 *U.S.* 640, 646–47, 103 *S.Ct.* 2605, 2610, 77 *L.Ed.*2d 65, 71 (1983); *see also R.* 3:3–1(c)(5).

▮▮▮ Whenever the police arrest a person, they may conduct a search incident to the arrest of the person and the area within his immediate control. *State v. Daniels,* 393 *N.J.Super.* 476, 487–91, 924 *A.*2d 582 (App.Div.2007). One purpose of such a search is protection of the arresting officer in transporting the arrestee to police headquarters. *Id.* at 487–91, 924 *A.*2d 582.

▮▮▮ Furthermore, the arrest is not required to precede the search. *State v. O'Neal,* 190 *N.J.* 601, 614–15, 921 *A.*2d 1079 (2007). "It is the 'right to arrest' rather than the actual arrest that 'must pre-exist the search.'" *Id.* at 614, 921 A.2d 1079 (quoting *State v. Doyle,* 42 *N.J.* 334, 342, 200 *A.*2d 606 (1964)). "As long as the right to arrest pre-existed the search, and the 'arrest is valid independently of, and is not made to depend on, the search or its result,' the search will not be invalidated 'simply because in precise point of time the arrest does not precede the search.'" *Id.* at 614–15 (quoting *Doyle, supra,* 42 *N.J.* at 343, 200 *A.*2d 606).

Before Officer Geoghan seized Mazza's wallet from inside the mesh pocket of R.M.'s backpack, he had a right to detain R.M. and bring him to police headquarters in order to verify his identification, issue him a summons for the violation of the curfew ordinance, and return him to his parents' custody. Moreover, it is evident Officer Geoghan intended to detain R.M. for these purposes; there is no basis for concluding that he was simply going to leave R.M. on the streets, in violation of the curfew, without verifying his identity. R.M.'s violation of the curfew ordinance constituted a continuing violation, which Officer Geoghan had a responsibility to terminate by taking him into custody. It is also

clear that the wallet was in the area within R.M.'s immediate control because it was contained in a backpack he was carrying on his person.

Furthermore, the seizure of the wallet from R.M.'s backpack and search of its contents was directly related to R.M.'s violation of the curfew ordinance, which was the reason for his arrest, and to Officer Geoghan's discharge of his responsibilities for enforcement of that ordinance. Before Officer Geoghan observed the wallet in plain view in R.M.'s backpack, R.M. and his companion had both asserted that they did not have any identification in their possession. Without reliable evidence of R.M.'s identity, Officer Geoghan was not in a position either to issue him a summons or to return him to his parents' custody. It was reasonable for Officer Geoghan to believe that the wallet in R.M.'s backpack would contain evidence of his identity and address, which would enable Officer Geoghan to complete the performance of his official responsibilities regarding R.M.'s violation of the curfew ordinance. *Cf. State v. Pena–Flores,* 198 *N.J.* 6, 31–32, 965 *A.*2d 114 (2009) (holding that where operator of motor vehicle who has committed traffic violation is unable to produce registration for car, police officer may conduct search of glove compartment and other areas where registration is ordinarily kept). Such identification also could provide corroborative evidence that R.M. was under the age of eighteen and consequently subject to the curfew ordinance. Therefore, the seizure and subsequent search of the wallet constituted a valid search incident to R.M.'s arrest.

Affirmed.